**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------- x

**FRESH DEL MONTE PRODUCE INC.,** :

**Plaintiff,** : 08-Cv-08718(SHS)

**- against -** :

:

**DEL MONTE FOODS COMPANY, and**
**DEL MONTE CORPORATION,** :

**Defendants.** :

--------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT**
**OF PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION**

Kenneth A. Plevan
Anthony J. Dreyer
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Tel: (212) 735-3000

Attorneys for Plaintiff
*Fresh Del Monte Produce, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

BACKGROUND FACTS ..... 3

A. The Parties ..... 3

B. The Fresh Fruit License Agreement ..... 3

C. DMC's Cut-Fruit Line and Its Promotional Claims ..... 4

D. The Falsity of the Print Ad ..... 5

E. The Pending Fresh Summit Trade Show and the Immediate Irreparable Harm Facing Fresh Del Monte ..... 6

ARGUMENT ..... 8

THE COURT SHOULD GRANT FRESH DEL MONTE'S APPLICTION FOR A PRELIMINARY INJUNCTION ..... 8

A. Preliminary Injunction Standard ..... 8

B. Fresh Del Monte Is Likely to Succeed on the Merits of Its Claim ..... 8

1. Relevant Lanham Act-False Advertising Standards ..... 8

2. DMC's Claims Are Materially False and/or False by Necessary Implication ..... 9

C. Fresh Del Monte Will Be Irreparably Harmed If DMC Is Not Enjoined ..... 11

D. The Hardships Tip Strongly in Favor of a Preliminary Injunction ..... 13

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

## CASES

*Castrol, Inc. v. Quaker State Corp.*,
977 F.2d 57 (2d Cir. 1992) .......... 8, 9, 11

*Century 21 Real Estate, LLC v. Raritan Bay Realty, Ltd.*,
No. CV-07-1455, 2007 U.S. Dist. LEXIS 34108 (E.D.N.Y. May 9, 2007) .......... 12

*Del Monte Corp. v. Del Monte Fresh Produce*,
No. 98 Civ. 4060 (JSR) (S.D.N.Y. Mar. 18, 1999) .......... 3

*Freedom Calls Foundation v. Bukstel*,
No. 05 CV 5460, 2006 U.S. Dist. LEXIS 19685 (E.D.N.Y. Mar. 3, 2006) .......... 13

*Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.*,
960 F.2d 294 (2d Cir.1992) .......... 8

*S.C. Johnson & Son, Inc. v. Clorox Co.*,
241 F.3d 232 (2d Cir. 2001) .......... 9

*Telebrands Corp. v. E. Mishan & Sons*,
No. 97 Civ. 1414, 1997 U.S. Dist. LEXIS 6229 (S.D.N.Y. May 5, 1997) .......... 11

*Time Warner Cable, Inc. v. DirecTV, Inc.*,
497 F.3d 144 (2d Cir. 2007) .......... 8, 9, 11, 12, 13

# PRELIMINARY STATEMENT

Plaintiff Fresh Del Monte Produce Inc. ("Fresh Del Monte") submits this Memorandum of Law in support of its application for a preliminary injunction enjoining defendants Del Monte Foods Company and Del Monte Corporation (collectively, "DMC") from disseminating a false print advertisement for its cut-fruit products, and from making promotional claims similar to those set forth in the print advertisement.

DMC is the owner of the world-famous DEL MONTE trademark, and has the right in the United States to use the DEL MONTE trademark in connection with processed food. Pursuant to a perpetual royalty-free license from DMC, Fresh Del Monte holds the exclusive right to sell in the United States and elsewhere, fresh fruit, fresh vegetables, and fresh produce – including cut, refrigerated fresh fruit and vegetables – under the DEL MONTE trademark. In an effort to compete with Fresh Del Monte's popular fresh fruit products, DMC has launched a line of processed, cut refrigerated fruit products that it is falsely and deceptively marketing in a manner to suggest that the products are fresh fruit or nutritionally equivalent to fresh fruit.

Most recently, DMC published a print advertisement in two national food industry trade publications touting the purported virtues of DMC's line of cut refrigerated fruit products. Among other claims, the print advertisement states that DMC's line of products is "[b]ursting with **the same essential nutrients as fresh-picked fruit**," is "specially packaged to seal in goodness," and that DMC "keep[s] raising the bar on convenient and healthy food solutions." (emphasis added).

As shown below, and as set forth more fully in the Declaration of Thomas R. Young, Ph.D., Fresh Del Monte's Vice President of Research, Development and Agricultural Sciences, DMC's products in fact do not contain the same essential nutrients as fresh fruit; rather, several of the products lack essential nutrients found in their fresh fruit equivalent. Moreover, although

the necessary implication of the print advertisement is that the products are nutritionally equivalent to fresh fruit, several of DMC's products are higher in sugar (containing added sugar unlike fresh fruit), calories, and sodium, and are lower in fiber. Thus, the print ad is literally false and false by necessary implication, in violation of Section 43(a) of the Lanham Act.

As is also shown below, and as set forth more fully in the Declaration of Emanuel Lazopoulos, Fresh Del Monte's Senior Vice President of North American Sales and Product Management, Fresh Del Monte faces immediate irreparable harm as a direct result of DMC's conduct. DMC's advertisement refers to a DMC booth at the Fresh Summit International Convention & Exposition (the "Fresh Summit") – one of the largest trade conventions for the produce industry, taking place from October 24 through October 27, 2008, in Orlando, Florida. Unless enjoined, DMC will continue to make its false claims, both orally and through written promotional materials, to a large audience of retailers at the Fresh Summit later next week, many of whom will invariably rely on DMC's statements in order to stock DMC's products in the refrigerated produce section of their supermarkets.

In addition, DMC's claims will also deceive others into thinking that the DMC Cut-Fruit Products are comparable in quality and nutritional value to fresh fruit. From the perspective of the consumer, there is no meaningful distinction between DMC and Fresh Del Monte products, because both use the DEL MONTE trademark. Thus, if DMC continues to falsely promote its DMC Cut-Fruit Products under false claims, and it is discovered that the DMC Cut-Fruit Products are not nutritionally comparable to fresh fruit, the enormous goodwill that has been built up in the DEL MONTE trademark will be damaged irreparably, thus injuring Fresh Del Monte.

## BACKGROUND FACTS[1]

### A. The Parties

Plaintiff Fresh Del Monte is the holding company for the Del Monte Fresh Produce group of companies. Fresh Del Monte is one of the world's leading vertically-integrated producers, marketers, and distributors of high-quality fresh and fresh-cut fruit and vegetables in the United States and the rest of the world, as well as a leading producer and distributor of fresh and prepared fruit and vegetables, juices, beverages, snacks, and desserts in Europe, the Middle East, and Africa. (Compl. ¶¶ 12-14.)

Defendant Del Monte Corporation is a wholly owned subsidiary of defendant Del Monte Foods Company. Under the DEL MONTE Marks, DMC produces and distributes processed fruit and vegetable products in the United States, and has licensed rights to use the DEL MONTE Marks in connection with processed foods outside of the United States to other companies, including Fresh Del Monte. (Compl. ¶¶ 15-16.)

### B. The Fresh Fruit License Agreement

Prior to August 1989, DMC was a wholly owned subsidiary of RJR Nabisco, Inc., and was divided into two major operations. One operation was responsible for processed foods, including canned fruits and vegetables, fruit juices, and dried fruits, while the other sold fresh fruits. In late 1989, the fresh fruit portions of the Del Monte business were sold to Polly Peck International, and ultimately the fresh fruit operation became the Plaintiff Fresh Del Monte. (Op. at 5-6.)

---

1 The facts set forth herein are derived from the Complaint, the Declarations submitted in support of this motion, and from the findings of fact in *Del Monte Corp. v. Del Monte Fresh Produce*, No. 98 Civ. 4060 (JSR) (S.D.N.Y. Mar. 18, 1999), which is annexed as Exhibit 1 to the Complaint.

Pursuant to the sale of the fresh produce operation, DMC retained ownership of the licensed DEL MONTE Marks, but through the Fresh Fruit License Agreement, it granted to the owner of the Del Monte fresh produce business the perpetual, exclusive and royalty-free right and license to use those marks on or in connection with the production, manufacture, sale, and distribution of "fresh fruit, fresh vegetables and fresh produce." DMC retained the rights to the DEL MONTE Marks in connection with the production, manufacture, sale and distribution of any goods other than "fresh fruit, fresh vegetables and fresh produce," namely, processed foods. (*Id.* at 7-8, 10.)

In the late 1990s, a dispute arose between Fresh Del Monte and DMC regarding the scope of Fresh Del Monte's rights under the Fresh Fruit License Agreement, and in particular, whether Fresh Del Monte had the right to use the DEL MONTE Marks in connection with cut, refrigerated fruit. Following a four-day bench trial, on March 18, 1999, the Honorable Jed S. Rakoff of this Court issued Findings of Facts and Conclusions of Law, holding that Fresh Del Monte's exclusive rights include the right to sell cut fresh fruit (including cut, refrigerated fruit) and all other fresh produce – "that is, all foods sold at the fresh produce counter besides fresh fruits and fresh vegetables." (*See* Op. at 11-12.)

**C. <u>DMC's Cut-Fruit Line and Its Promotional Claims</u>**

Notwithstanding the decision by Judge Rakoff, DMC continued to explore new ways to attempt to enter into the fresh fruit and produce market to compete with Fresh Del Monte. In this regard, DMC has created several products and/or product lines that are produced, packaged, labeled, and marketed in such a manner that they would appear to be packaged, cut fresh fruit products, rather than processed goods. These product lines are "Fruit Naturals," "SunFresh," "Orchard Select," and "Superfruit," as well as "ready-to-enjoy" grapefruit products (collectively, the "DMC Cut-Fruit Products"). (Lazopoulos Decl. ¶ 5.)

In or around the week of October 6, 2008, DMC published advertisements for the DMC Cut-Fruit Products in *Produce Merchandising* and *The Packer* (the "Print Ad"), two of the most widely read trade publications in the produce industry. (*Id.* ¶ 8.) The Print Ad describes DMC as the "refrigerated fruit category leader" and the DMC Cut-Fruit Products as "innovative chilled fruit combinations that entices shoppers to explore what's new in the produce section." (Young Decl. Ex. 1.) DMC further claims that the Products are "[b]ursting with **the same essential nutrients as fresh-picked fruit**," are "specially packaged to seal in goodness," and that DMC "keep[s] raising the bar on convenient and healthy food solutions." (emphasis added). (*Id.*)

**D. <u>The Falsity of the Print Ad</u>**

As set forth more fully in the declaration of Thomas R. Young, Ph.D., the Print Ad contains material claims that are literally false and/or false by necessary implication.[2] With respect to DMC's claim that the DMC Cut-Fruit Products contain the "same essential nutrients" as fresh fruit,[3] Dr. Young's analysis of nine Products revealed that, in fact, seven DMC Cut-Fruit Products tested lack at least one essential nutrient that is present in the fresh fruit equivalent. (Young Decl. ¶ 13.) For example:

- DMC's Fruit Naturals Pineapple lacks vitamin A, calcium and iron, whereas fresh pineapple contains all three of these essential nutrients.
- DMC's Orchard Select Cling Peaches and Fruit Naturals Peach Chunks both lack iron, which is found in fresh peaches;
- DMC's Orchard Select Apricot Halves, Orchard Select Bartlett Pears, Sun Fresh Mandarin Oranges, and Sun Fresh Mangos all lack calcium, which is found in fresh apricots, pears, mandarin oranges and mangos; and

---

2 The Complaint asserts other instances of false and/or misleading claims by DMC. (*See* Compl. ¶¶ 30-42.) For purposes of this motion, however, Fresh Del Monte seeks only to enjoin the claims made in the Print Ad and to the Subway representative.

3 As Dr. Young explains, essential nutrients are those nutrients the body requires but cannot produce on its own. (Young Decl. ¶ 8.) Examples include vitamins (such as vitamin A and vitamin C), and minerals (such as calcium and iron). (*Id.*)

- DMC's Sun Fresh Mandarin Oranges lack vitamin A, whereas fresh mandarin oranges contain vitamin A.

(*Id.*) In addition, for several of the DMC Cut-Fruit Products, the overall level of certain essential nutrients that are present is below the level that exists in the comparable fresh fruit. (*Id.* ¶ 14.)

Nor are the DMC Cut-Fruit Products nutritionally equivalent to fresh fruit. (*Id.*¶ 15.) In addition to lacking comparable essential nutrients, as noted above, the DMC Cut-Fruit Products differ in other nutritional categories, such as the following:

- Virtually all of the nine DMC Cut-Fruit Products contain more sugar than comparable serving sizes of their fresh fruit equivalents, with DMC's Orchard Select Cling Peaches containing nearly double the level of sugar found in fresh peaches;
- All nine of the DMC Cut-Fruit Products have more calories than comparable serving sizes of their fresh fruit equivalents, with the exception of its Orchard Select Bartlett Pears (which have the same calories as fresh pears) and Sun Fresh Mango;
- All nine of the DMC Cut-Fruit Products have less fiber than comparable serving sizes of their fresh fruit equivalents;
- All nine of DMC's Cut-Fruit Products contain added sodium, whereas none of the fresh fruits contains any sodium, except for white pineapple; and
- All nine of DMC's Cut-Fruit Products contain less protein than comparable serving sizes of their fresh fruit equivalents.

(*Id.*)

**E. The Pending Fresh Summit Trade Show and the <u>Immediate Irreparable Harm Facing Fresh Del Monte</u>**

The clear marketing goal of DMC running the Print Ad is to obtain placement for the DMC Cut-Fruit Products in supermarket produce departments. (Lazopoulos Decl. ¶ 10.) This is apparent from the references in the Print Ad to the produce department and the fact that the *Produce Merchandising* and *The Packer* publications are read by produce trade buyers and used by them to make purchasing decisions. (*Id.*)

In addition, the Print Ad states that the DMC Cut-Fruit Products are "lined up now at PMA Booth 1501." (*Id.* ¶ 11.) This is a reference to one of DMC's booths at the upcoming Fresh Summit in Orlando, which begins October 24, 2008. (*Id.*) The Fresh Summit is one of the largest international events solely dedicated to fruit, vegetables and floral. (*Id.*) It annually draws more than 17,000 attendees from 70 countries across the entire food supply chain. (*Id.*) Tickets to the 2008 Fresh Summit are purportedly sold out. (*Id.*)

Based on information in the Print Ad, it appears that DMC will have a booth at the Fresh Summit, and while there will promote the DMC Cut-Fruit Products. (*Id.* ¶ 12.) Given that DMC ran the Print Ad prominently in two leading trade publications on the eve of the Fresh Summit, DMC will undoubtedly use the same claims in its sales and marketing efforts at the Fresh Summit convention. (*Id.*) This certainly includes disseminating reprints of the Print Ad and/or using the same claims in other hand outs and sales presentations. (*Id.*)

It is also anticipated that DMC will also advise members of the trade attending the Fresh Summit that the DMC Cut-Fruit Products consist of fresh fruit. (*Id.* ¶ 13.) In this regard, a DMC sales representative recently left a voicemail message with a buyer for the "Subway" sandwich chain in which the representative referred to one of the DMC Cut-Fruit Products as a "premium, peeled, **fresh**, ready-to-eat product" (emphasis added). (*Id.*) This statement is false because the DMC Cut-Fruit Products are not fresh, but rather are processed. (*Id.*)

## ARGUMENT

## THE COURT SHOULD GRANT FRESH DEL MONTE'S APPLICTION FOR A PRELIMINARY INJUNCTION

### A. Preliminary Injunction Standard

The standard for granting a preliminary injunction in the Second Circuit is well established. The party seeking such relief need only demonstrate: (1) either a likelihood of success on the merits of its case, or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in plaintiff's favor, and (2) a likelihood of irreparable harm if preliminary injunctive relief is denied. *See Time Warner Cable, Inc. v. DirecTV, Inc.*, 497 F.3d 144, 152-53 (2d Cir. 2007); *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 62 (2d Cir. 1992) (affirming district court's grant of preliminary injunction to plaintiff on false advertising claims).

### B. Fresh Del Monte Is Likely to Succeed on the Merits of Its Claim

#### *1. Relevant Lanham Act-False Advertising Standards*

To succeed on a false advertising claim under Section 43(a) of the Lanham Act, a plaintiff must show either: (1) that the challenged advertisement is literally false; or (2) even if the advertisement is literally true, that it is nevertheless likely to mislead or confuse consumers. *See Johnson & Johnson-Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir.1992). In lieu of establishing literal falsity, a plaintiff may show that the claim is false by necessary implication – that is, when the claim is viewed in its entirety it conveys a false message. *See DirecTV*, 497 F.3d at 153, 158. Finally, plaintiff must show that the false or misleading representation involved an inherent or material quality of the product. *Id.* at 153 n.3.

If an advertisement is literally false or false by necessary implication, the court may enjoin the use of the claim "without reference to the advertisement's . . . impact on the buying

public." *Id.* at 153 (citation and internal quotation marks omitted); *see also S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001).[4] Thus, in order to demonstrate the falsity of the challenged claim, plaintiff only need to adduce evidence "that affirmatively show[s] [defendant's] claim . . . to be false." *Castrol, Inc.*, 977 F.2d at 63.

*2. DMC's Claims Are Materially False and/or False by Necessary Implication*

Here, defendant DMC has advertised that the DMC Cut-Fruit Products are "[b]ursting with the **same essential nutrients** as fresh-picked fruit . . . ." (Young Decl., Ex. 1, emphasis added.) As set forth in the Declaration of Dr. Thomas Young, this statement is literally false.

As Dr. Young makes clear, seven out of the nine DMC Cut-Fruit Products he compared lack at least one essential nutrient that is present in the fresh fruit equivalent of the Product. (Young Decl. ¶ 13.) For example, DMC's Fruit Naturals Pineapple lacks vitamin A, calcium and iron, whereas fresh pineapple contains all three of these essential nutrients. (*Id.*) DMC's Orchard Select Cling Peaches and Fruit Naturals Peach Chunks both lack iron, which is found in fresh peaches. (*Id.*) And DMC's Orchard Select Apricot Halves, Orchard Select Bartlett Pears, Sun Fresh Mandarin Oranges, and Sun Fresh Mangos all lack calcium, which is found in fresh apricots, pears, mandarin oranges and mangos. (*Id.*)

Moreover, in several instances, the overall level of the essential nutrients that are present in DMC Cut-Fruit Products is below the level that exists in comparable fresh fruit. (*Id.* ¶ 14.) For example, the level of vitamin A in DMC's Fruit Naturals Red Grapefruit and Red Grapefruit Bowl products is only 2% of the recommended daily requirement, as compared to 25% in fresh grapefruit. (*Id.*)

---

4 In contrast, where a plaintiff's theory of recovery is premised upon a claim of implied falsehood, a plaintiff must demonstrate that the challenged advertisement tends to mislead or confuse consumers. *See, e.g.*, *Time Warner Cable, Inc. v. DirecTV*, 497 F.3d 144, 153 (2d Cir. 2007) (citation omitted).

In short, there can be no doubt that the DMC Cut-Fruit Products do not contain the same essential nutrients as their fresh fruit counterparts. Accordingly, Fresh Del Monte is likely to succeed in demonstrating that DMC's "same essential nutrients" claim is literally false.

Similarly, Fresh Del Monte is likely to succeed in demonstrating that the Print Ad is false by necessary implication. In addition to stating that the DMC Cut-Fruit Products contain the "same essential nutrients as fresh-picked fruit," the Print Ad states that DMC "keep[s] raising the bar on convenient and healthy food solutions," and that the Products are "specially packaged to seal in goodness." (*Id.* Ex. 1.) The necessary implication of these claims is that the DMC Cut-Fruit Products are nutritionally equivalent to their fresh fruit counterparts.

As Dr. Young has demonstrated, however, there are numerous nutritional differences between the DMC Cut-Fruit Products and fresh fruit. As noted, the Products contain fewer essential nutrients (and lower levels of some of those essential nutrients they do have). In addition, virtually all of the DMC Cut-Fruit Products contain more sugar and calories than comparable serving sizes of their fresh fruit equivalents. (Young Decl. ¶ 15.) All of the DMC Cut-Fruit Products have less fiber than comparable serving sizes of their fresh fruit equivalents. (*Id.*) And virtually all of the DMC Cut-Fruit Products have added sodium. (*Id.*)

With respect to the materiality of DMC's claims, there can be little doubt that the nutritional value of fruit is an "inherent or material quality of the product." Indeed, as Fresh Del Monte's Senior Vice President for Sales & Product Management makes clear, nutritional value is a material factor that influences the decision of consumers to purchase fruit products. (Lazopoulos Decl. ¶ 9.)

Finally, DMC has also recently promoted the DMC Cut-Fruit Products as "fresh." (*Id.* ¶ 13.) As is evident from the DMC Cut-Fruit Products' labels, the products at issue contain

additives such as ascorbic acid, which act as preservatives to extend their shelf life for several months and longer. Thus, the DMC Cut-Fruit Products cannot be considered "fresh fruit" by any definition of the term.

**C. Fresh Del Monte Will Be Irreparably Harmed If DMC Is Not Enjoined**

As noted, a plaintiff seeking a preliminary injunction under the Lanham Act must also demonstrate that it is likely to suffer irreparable harm in the absence of immediate, injunctive relief. *See DirecTV*, 497 F.3d at 153. Because "[i]t is virtually impossible" to prove that sales will be lost or goodwill will be damaged as a direct result of a competitor's advertisement, the Second Circuit has held that a plaintiff "need not . . . point to an actual loss or diversion of sales" to satisfy this requirement. *Id.* at 161 (citation omitted).

Rather, where the plaintiff demonstrates a likelihood of success in establishing the literal falsity of comparative advertising that mentions the plaintiff's product by name, immediate irreparable harm is presumed. *See Castrol, Inc.*, 977 F.2d at 62. Immediate irreparable harm also will be presumed where the challenged statements can be fairly understood to target the plaintiff and/or "necessarily diminishes" the challenger's product, even if they do not identify the competitor by name. *DirecTV*, 497 F.3d at 162 (holding that irreparable harm presumed where challenged statements referencing "cable" television were made in areas where Time Warner offered cable); *see also Telebrands Corp. v. E. Mishan & Sons*, No. 97 Civ. 1414, 1997 U.S. Dist. LEXIS 6229, at *66 (S.D.N.Y. May 5, 1997) ("The paramount public interest in avoiding false advertising creates an inference of irreparable injury, where the parties are competitors.").

Here, there can be no doubt that the Print Ad and DMC's false oral claims "necessarily diminish" Fresh Del Monte. As Fresh Del Monte's Senior Vice President, Sales & Product Management for North America made clear, from the perspective of the consumer, there is no meaningful distinction between DMC and Fresh Del Monte products, because both use the DEL

MONTE trademark. (Lazopoulos Decl. ¶ 19.) Thus, if DMC continues to falsely promote its DMC Cut-Fruit Products under false claims, consumers and the trade inevitably will become dissatisfied with the DMC Products because they do not live up to these claims. (*Id.*) As a result, the enormous goodwill that has been built up in the DEL MONTE trademark will be damaged irreparably, thus injuring Fresh Del Monte. (*Id.*)[5] In such circumstances, DMC's conduct is analogous to the brand damage caused by trademark infringement, where irreparable harm is presumed. *See, e.g.*, *Century 21 Real Estate, LLC v. Raritan Bay Realty, Ltd.*, No. CV-07-1455, 2007 U.S. Dist. LEXIS 34108, at *6 (E.D.N.Y. May 9, 2007) ("[w]here the party seeking a preliminary injunction in a trademark case shows that it will 'lose control over the reputation of its trademark pending trial,' the requirement of irreparable injury is satisfied") (quoting *Power Test Petroleum Distribs. v. Calcu Gas*, 754 F.2d 91, 95 (2d Cir. 1985)).

Even absent a presumption of irreparable harm, a plaintiff need only submit "proof which provides a reasonable basis for believing that the false advertising will likely cause it injury." *DirecTV*, 497 F.3d at 161 (citation and internal quotes omitted). Fresh Del Monte can easily meet that burden. The fact that DMC is making these false claims under the DEL MONTE Marks in and of itself provides a "reasonable basis" to conclude Fresh Del Monte will be irreparably harmed.

Moreover, DMC's placement of the Print Ad in *Produce Merchandising* and *The Packer*, and the dissemination of false statements in connection with the Fresh Summit – one of the largest industry trade shows at which retailers make important purchasing decisions –

---

5 Furthermore, because of the joint use of the DEL MONTE trademark, Fresh Del Monte cannot redress this problem through its own counter-advertising or promotional efforts as it would be able to do with other competitors. (*Id.* ¶ 20.) Any consumer or trade-directed effort to challenge the claims made by DMC under the DEL MONTE trademark would damage Fresh Del Monte's product reputation and sales, and further confuse the public. (*Id.*)

unquestionably will influence retailers to purchase and stock DMC's Cut-Fruit Products on supermarket shelves. Given the references in the Print Ad to "chilled fruit," and the "produce section," DMC's statements clearly are designed to induce retailers to stock the DMC Cut-Fruit Products in the refrigerated produce section alongside (or in place of) fresh, cut refrigerated produce sold by Fresh Del Monte and other companies. (Lazopoulos Decl. ¶ 16.) Thus, there is a "reasonable basis" to conclude Fresh Del Monte will be irreparably harmed by DMC's conduct.

**D. <u>The Hardships Tip Strongly in Favor of a Preliminary Injunction</u>**

Where – as here – plaintiff demonstrates a likelihood of success and irreparable harm as a result of the challenged advertising, a preliminary injunction should issue, and the Court need not weigh the balance of hardships. *See, e.g., Freedom Calls Found. v. Bukstel*, No. 05 CV 5460, 2006 U.S. Dist. LEXIS 19685 (E.D.N.Y. Mar. 3, 2006) (granting preliminary injunction in an action brought under the Lanham Act after determining likelihood of success on the merits and irreparable harm, without weighing the balance of hardships). If, however, the court believes the likelihood of success on the merits to be a sufficiently close question, an injunction nevertheless may issue where the balance of the hardships tips strongly in favor of the party seeking preliminary injunctive relief. *See DirecTV*, 497 F.3d at 153.

As noted above, there can be little doubt that Fresh Del Monte would suffer tremendous hardship if the preliminary injunction were not to issue. In contrast, DMC would face little-to-no hardship whatsoever if it were precluded from claiming that the DMC Cut-Fruit Products are "fresh fruit" or have the same essential nutrients as fresh-picked fruit. DMC would be free to market and sell the Products during the pendency of this lawsuit. Nor would it be required to alter any existing product packaging. All that would be required of DMC is to refrain from future dissemination of the Print Ad (and any similar advertisement or promotional claims) or any oral or written claims that the DMC Cut-Fruit Products constitute fresh produce or fresh fruit.

## CONCLUSION

For all the foregoing reasons, Fresh Del Monte requests that its application for a preliminary injunction be granted in its entirety.

Dated: October 14, 2008
New York, New York

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

Kenneth A. Plevan
Kenneth.Plevan@skadden.com
Anthony J. Dreyer
Anthony.Dreyer@skadden.com
Jordan Feirman
Jordan.Feirman@skadden.com
New York, New York 10036-6522
Telephone: (212) 735-3000

Attorneys for Plaintiff
*Fresh Del Monte Produce Inc.*