UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

FRESH DEL MONTE PRODUCE INC.,   :

                :

       Plaintiff and   :

       Counterclaim Defendant,   :

                :

   - against -   :        08-Civ-8718(SHS)

                :

DEL MONTE FOODS COMPANY, and   :

DEL MONTE CORPORATION,   :

                :

       Defendants and   :

       Counterclaim Plaintiffs.   :

                :

------------------------------------- x

<br>

## DONGGUK UNIVERSITY'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO INTERVENE

<br><br>

*McDermott Will & Emery LLP*
*340 Madison Avenue*
*New York, New York  10017*
*Attorneys for Intervenor Dongguk University*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................ i

BACKGROUND FACTS ............................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

I.      INTERVENTION IS APPROPRIATE TO ALLOW DONGGUK TO
        CHALLENGE DEL MONTE'S CLAIM OF CONFIDENTIALITY ............................... 3

II.     DONGGUK HAS A RIGHT TO OBTAIN DR. SIMONSON'S REPORT
        BECAUSE IT HAS NOT BEEN LEGITIMATELY DESIGNATED AS
        CONFIDENTIAL UNDER THE PROTECTIVE ORDER ................................................. 4

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AT&T Corp. v. Sprint Corp.*, 407 F.3d 560 (2d Cir. 2005)................................................3

*In re "Agent Orange" Prod. Liability Litigation*, 821 F.2d 139 (2d Cir. 1987)...............................5

*Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108 (3d Cir. 1986) ........................................5

*EEOC v. National Children's Ctr.*, 146 F.3d 1042 (D.C. Cir. 1998)...............................................3

*In re Ethylene Propyline Diene Monomer (EPDM) Antitrust Litigation*, 255 F.R.D. 308
(D. Conn. 2009) ....................................................................................................................6, 7

*Fournier v. McCann Erickson*, 242 F. Supp. 2d 318 (S.D.N.Y. 2003) ...........................................7

*International Equity Investment, Inc. v. Opportunity Equity Partners, Ltd.*,
Civ. No. 05-2745, 2010 WL 779314 (S.D.N.Y. Mar. 2, 2010) ...................................6, 7, 8

*Jessup v. Luther*, 227 F.3d 993 (7th Cir. 2000) ...............................................................3

*Martindell v. International Telegraph & Telegraph Corp.*, 594 F.2d 291 (2d Cir. 1979) ..............6

*In re Parmalet Sec. Litigation*, 258 F.R.D. 236 (S.D.N.Y. 2009) ....................................................6

*Schiller v. City of New York*, Nos. 04 Civ. 7922, 04 Civ. 7921, 2007 U.S. Dist. LEXIS
4285 (S.D.N.Y. Jan. 19, 2001)...........................................................................................6

*United States v. Hooker Chemicals & Plastics Corp.*, 540 F. Supp. 1067 (W.D.N.Y.
1982) ...................................................................................................................................4

## MISCELLANEOUS

Wright, Miller & Kane, *Federal Practice and Procedure* § 1916 (2007)...................................3, 4

Dongguk University ("Dongguk"), through its undersigned counsel, moves pursuant to Federal Rule of Civil Procedure ("FRCP") 24(b)(1)(B) to intervene in the above-captioned action (the "*Del Monte* case") for the limited purpose of challenging objections raised by Del Monte Foods Company and Del Monte Corporation (collectively, "Del Monte") that the report of its expert, Dr. Itamar Simonson ("*Del Monte* Expert Report"), is confidential and immune from discovery in Dongguk's unrelated litigation pending in the United States District Court for the District of Connecticut (the "Connecticut Action"). Specifically, Dongguk seeks permission to intervene in this action in order to challenge Del Monte's assertion that the *Del Monte* Expert Report contains confidential information protected from disclosure under this Court's Stipulated Protective Order of March 2, 2009 (the "Protective Order").

### BACKGROUND FACTS

As explained in the accompanying Affidavit of Robert A. Weiner ("Weiner Aff."), Dongguk is the plaintiff in an action against Yale University ("Yale"), which is presently pending in the United States District Court for the District of Connecticut. Dr. Simonson, Del Monte's expert in the *Del Monte* case, has been retained by Yale as a testifying expert in the Connecticut Action. (Weiner Aff., ¶ 3.) Dr. Simonson's role in both cases is to criticize the opinions offered by Dr. Jacob Jacoby, an expert retained both by plaintiff Fresh Del Monte Produce, Inc. in the *Del Monte* case and by Dongguk in the Connecticut Action. (Weiner Aff., ¶ 3.)

On June 1, 2011, Dongguk in the Connecticut Action issued a *subpoena duces tecum* ("Subpoena") to Dr. Simonson seeking production of documents, including expert reports that he has issued in the past five years. (Weiner Aff., Exh. A.) Dr. Simonson objected to producing certain expert reports that he prepared, including the expert report that he prepared in the

1

*Del Monte* case, on the ground that they had been designated as confidential in non-related litigations.  (Weiner Aff., Exh. C.)

On June 21, 2011, United States Magistrate Judge Holly B. Fitzsimmons, the magistrate judge assigned to the Connecticut Action, ordered that Dr. Simonson produce, *inter alia*, his expert reports that are responsive to the Subpoena (the "Order").  (Weiner Aff., Exh. D.) Magistrate Fitzsimmons's Order provided, however, that counsel for the non-parties who were or are subject to a prior confidentiality order be notified of her Order so that they could object to the production of allegedly confidential information.  (*Id.*)  On June 24, 2011, counsel for Dongguk and Yale jointly sent a letter to Del Monte's counsel notifying him of the Subpoena as well as Magistrate Fitzsimmon's Order.  (Weiner Aff., Exh. E.)

Thereafter, on June 29, 2011, Del Monte's counsel sent a letter to Dongguk's counsel objecting to the disclosure of the *Del Monte* Expert Report to the extent that it contained confidential material and provided a substantially redacted copy of the *Del Monte* Expert Report. (Weiner Aff., Exhs. G.)  On July 1, 2011, Del Monte filed a motion for protective order in the District of Connecticut seeking to prevent the production of Dr. Simonson's unredacted expert report.  (Weiner Aff., Exh. I.)

On August 10, 2011, Magistrate Fitzsimmons granted Del Monte's motion for protective order without prejudice to Dongguk to intervene in this action to seek production of the *Del Monte* Expert Report.  (Weiner Aff., Exh. J.)  Accordingly, Dongguk has filed this motion.

As explained in the Weiner Affidavit, Dongguk has good reason to believe that the redacted portions of the *Del Monte* Expert Report do not, in fact, contain confidential information subject to the Protective Order in the *Del Monte* case.  Rather, Dongguk submits that the redacted portion of the *Del Monte* Expert Report contains proof that in critiquing

Dr. Jacoby's survey in the Connecticut Action, Dr. Simonson used a different standard from the standard that he used when critiquing Dr. Jacoby's survey in the *Del Monte* case. (Weiner Aff., Exh. H; Jacoby Aff. ¶¶ 9-12.)

**ARGUMENT**

**I.    INTERVENTION IS APPROPRIATE TO ALLOW DONGGUK TO CHALLENGE DEL MONTE'S CLAIM OF CONFIDENTIALITY**

Permissive intervention is appropriate to allow Dongguk to challenge Del Monte's objections to the production of the *Del Monte* Expert Report on the basis of the Protective Order. As consistently construed by the federal courts, FRCP 24(b) permits a non-party with no other interest in the litigation to intervene for the limited purpose of seeking the disclosure of information that the parties have designated as confidential under a protective order. *E.g., AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) ("We have stated that permissive intervention is the proper method for a non-party to seek a modification of a protective order."); *Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000) ("every court of appeals to have considered the matter has come to the conclusion that FRCP 24 is sufficiently broad-gauged to support a request of intervention for the purposes of challenging confidentiality orders."); *EEOC v. National Children's Ctr.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998) (Collecting cases and stating "every circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders."). This is so even where the intervenor has no other claim or defense sharing a common question of law or fact with the main action. Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 1911 (2007).

In addition, as required by FRCP 24(b), Dongguk's motion is timely. This motion is being filed less than two months after Del Monte objected to the production of the Del Monte

3

Expert Report based on the Protective Order, and less than one week after Magistrate

Fitzsimmons granted Del Monte's motion for protective order in the Connecticut Action, leaving

Dongguk no means to obtain the *Del Monte* Expert Report other than to intervene in this action.

*See United States v. Hooker Chemicals & Plastics Corp.*, 540 F. Supp. 1067, 1082 (W.D.N.Y.

1982) (finding motions to intervene timely where made more than two months after the rationale

for seeking intervention came into being).

   More importantly, Dongguk's intervention is timely and appropriate because it will not

"delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(c); *see*

*also* Wright, Miller & Kane, *Federal Practice and Procedure* § 1916 ("The most important

consideration in deciding whether a motion for intervention is untimely is whether the delay in

moving for intervention will prejudice the existing parties to the case.") Resolving Dongguk's

challenge to the confidentiality of the *Del Monte* Expert Report will require only a minimal

amount of the parties' and the Court's time and will not prejudice the parties' interests in any

way.

## II.   DONGGUK HAS A RIGHT TO OBTAIN DR. SIMONSON'S REPORT BECAUSE IT HAS NOT BEEN LEGITIMATELY DESIGNATED AS CONFIDENTIAL UNDER THE PROTECTIVE ORDER

   Dongguk has a strong interest in challenging Del Monte's claim of confidentiality and

obtaining the *Del Monte* Expert Report because the opinions Dr. Simonson has offered in the

*Del Monte* case are directly relevant to and show the unreliability of his opinions in the

Connecticut Action.  As stated in the affidavit of Dr. Jacoby, the critiques and opinions that

Dr. Simonson has offered in the *Del Monte* case flatly contradict the critiques and opinions he

has offered in the Connecticut Action.  (Weiner Aff., Exh. H, Jacoby Aff. ¶¶ 9-12.)  Dongguk is

entitled to discover such inconsistencies in its adversary's expert's opinions.  Indeed, the District

of Connecticut has already ruled that Dongguk has the right to obtain the information

4

subpoenaed from Dr. Simonson, subject to any applicable protective order.  (Weiner Aff., Exh. D.)

Dongguk further submits that the Protective Order here should not apply to the *Del Monte* Expert Report because it is inconceivable that the large sections Del Monte has redacted contain legitimately confidential information. *See In re "Agent Orange" Prod. Liab. Litig.*, 821 F. 2d 139, 145 (2d Cir. 1987) (Where discovery materials do not contain confidential information, "the discovery materials in question should not receive judicial protection ....") Like *Agent Orange*, Del Monte could not have had a good faith basis to reasonably believe that virtually the entire report contains "non-public, sensitive, proprietary or commercial information" warranting the confidentiality designation, as required by Paragraph 3 of the Protective Order.

Based on Dr. Jacoby's review of the *Del Monte* Expert Report, Dongguk has good reason to believe that the redacted portions relate almost entirely to Dr. Simonson's critique of a ***public*** survey conducted by Dr. Jacoby—not to any non-public, sensitive, proprietary or commercial information of Del Monte.  (Weiner Aff., Exh. H, Jacoby Aff., ¶ 7.)  Indeed, it defies reason to believe that an expert's critique of another expert's public survey meets the definition of "Confidential-Attorneys' Eyes Only Information" under the Protective Order—*i.e.*, "competitively sensitive commercial information, such as trade secrets, the disclosure of which will result in competitive disadvantage or harm if disclosed . . ."—or even the less restrictive category of "Confidential Information"—*i.e.*, "confidential or proprietary data, business information, and/or research, development, personnel, commercial or financial information."

Under Paragraph 12 of the Protective Order and FRCP 26(c), Del Monte has the burden to prove good cause for its confidentiality designations. *See, Cipollone v. Liggett Group, Inc.,*

785 F.2d 1108, 1122 (3d Cir. 1986) ("burden of justifying the confidentiality of each and every document . . . remains on the [designating party]; any other conclusion would turn Rule 26(c) on its head."); *In re Parmalet Sec. Litig.*, 258 F.R.D. 236, 243 (S.D.N.Y. 2009) ("The burden of establishing good cause then lied with the party seeking to prevent the disclosure of [allegedly confidential material]."); *Schiller v. City of New York*, Nos. 04 Civ. 7922, 04 Civ. 7921, 2007 U.S. Dist. LEXIS 4285, at *16-*17 (S.D.N.Y. Jan. 19, 2001).

In opposing Dongguk's application in the Connecticut Action, Del Monte cited *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979) and argued that to obtain the *Del Monte* Expert Report, Dongguk must demonstrate that the Court either improvidently granted the Protective Order or the existence of extraordinary circumstances or a compelling need. (Weiner Aff., Exh. I.) Such an argument lacks merit, because in *Martindell*, the Second Circuit only required non-parties to make such a showing where the confidentiality of the information sought, and its right to protection under a court's order, has not been in dispute.

As explained in *Intl. Equity Investment, Inc. v. Opportunity Equity Partners, Ltd.*, Civ. No. 05-2745, 2010 WL 779314 (S.D.N.Y. March 2, 2010), (Appendix A hereto), in deciding whether to apply the *Martindell* presumption against modification, a court must consider four factors in order to determine "whether a party reasonably relied on the protective order." *Id.* at *4. These factors are:

> (1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order. *Id.* at *4.

*See also, In re: Ethylene Propyline Diene Monomer (EPDM) Antitrust Litigation*, 255 F.R.D. 308, 318-19 (D. Conn. 2009).

In determining whether to apply the *Martindell* presumption, the *Intl. Equity* court stated that a "key consideration for assessing reasonableness is whether the protective order is an

6

'umbrella' blanket-type order, or a targeted protective order." *Id.* at *4. As explained by the *Intl. Equity* court, "[u]mbrella orders, and especially stipulated protective orders, give the parties wide berth to give sweeping protection to most or all materials produced in the litigation." *Id.* at *4. The *Intl. Equity* court further explained that:

> "A protective order granted on the basis of a stipulation by the parties carries less weight than a protective order granted after a hearing to show good cause." *EPDM*, 255 F.R.D. at 321; see also Fournier, 242 F.2d at 341). By contrast, targeted protective orders designate specific documents after a request for confidentiality, and are typically granted by a court after a good cause hearing. *See, e.g., Martindell*, 594 F.2d at 292-93 . . . *Id.* at *4.

In determining that the stipulated protective order in *Intl. Equity* did not deserve a *Martindell* presumption, the court noted that under the order, the parties "had free reign to designate confidential any and all documents . . . upon a good faith showing only." *Id.* at *5.

The Protective Order in the *Del Monte* Expert Report (Weiner Aff., Exh. F) is an "umbrella" protective order which permits the parties "in good faith" to designate what they deem to be "confidential information." (*See* Weiner Aff., Exh. F; Paragraph 2(d).) Significantly, Paragraph 11 of the Protective Order further provides that the "designation of Confidential or Confidential-Attorneys' Eyes Only Information pursuant to this Protective Order does not create any presumption with respect to the confidential, proprietary, or trade secret nature of any information, documents, or things." (Weiner Aff., Exh. F.)

Moreover, Paragraph 12 of the Protective Order provides that if "a receiving party shall at any time disagree with the Producing party's designation of any material as Confidential or Confidential-Attorneys' Eyes Only Information," the receiving party may challenge the "confidential designation." (Weiner Aff., Exh. F.) Paragraph 12 further provides that the "burden of proof and persuasion shall be on the Producing party to demonstrate to the Court"

7

that the documents designated as confidential are in fact confidential. (*Id.*) As explained by the

*Intl. Equity* court:

> The reasonableness of the Parties' indefinite reliance on a confidentiality order is
> diminished if they plan for its modification. This confidentiality order permits the
> parties to challenge a designation and, if a dispute arises, to seek court
> intervention to "remove or change" a particular document's designation.
> (Original CO ¶ 6.) Further, the confidentiality order does not limit a party's right
> to seek judicial modification of the order. *Id.* ¶ 11. (citations omitted.) *Id.* at *5.

The inclusion of Paragraph 12 into the Protective Order is another reason why the *Martinelli*

presumption does not apply in this case.

Moreover, the "amount of consideration that an issuing court has given to the protective

order affects the presumption against its modification." *Id.* at *6.  Thus, the *Martindell*

presumption should not be applied when a court, as here, "So Ordered" the stipulated

confidentiality order without a good cause hearing or the opportunity to review the protected

materials." *Id.* at *6.

Another factor to be considered is the "intervenor's purpose" and "whether the intervenor

can obtain the materials through his own discovery initiative . . ." *Id.* at *8.  This factor has been

satisfied by Dongguk.  As explained in the Weiner Affidavit, Dongguk has already demonstrated

to Magistrate Fitzsimmons in the Connecticut Action why it is entitled to that portion of the

*Del Monte* Expert Report that critiques Dr. Jacoby's survey.  The only reason why the *Del Monte*

Expert Report was not produced was because of the Del Monte confidentiality and their demand

that this Court determine that issue.

In *Intl. Equity*, the non-party sought to intervene in the litigation to obtain "confidential

information related to [the parties'] internal business dealings" so that they could use the

documents in defense of an action brought by one of the parties to the pending lawsuit against

the intervening party in Brazil. *Id.* at *8.  The documents sought by the intervening party had

been designated as confidential by the parties under a confidentiality stipulation.  In denying the
intervening party's application, the Court stated:

> Demarco's role in pending foreign litigations is not a compelling reason for
> modification.  At best, his role permits him to seek intervention, and, at worst, he
> appears to be using his purported status to avoid discovery limitations that he has
> encountered in Brazil.  2010 WL 779314, at *9.

This is not the case here.

In contrast to the position of the non-party in *Intl. Equity*, Dongguk has no interest in
obtaining any of Del Monte's confidential business information nor is it seeking to use anything
that it learns from Dr. Simonson against Del Monte in some other proceeding.  More
importantly, as stated above, what Dongguk is seeking is by its very nature non-confidential – an
expert report prepared by Dr. Simonson that critiques Dr. Jacoby's public survey.

Therefore, should the Court permit Dongguk's limited intervention in this action,
Dongguk requests that the Court order Del Monte to show cause why its confidentiality
designations of the *Del Monte* Expert Report are warranted and to submit an unredacted copy of
the report for *in camera* review.

Even if the Court finds that any part of the *Del Monte* Expert Report is confidential and
entitled to protection, it remains possible to accommodate Dongguk's discovery interests  while
also protecting Del Monte's interests in confidentiality.  For example, to the extent that portions
of the *Del Monte* Expert Report are legitimately confidential, the Court could order Del Monte to
redact only that information (*i.e.*, any numbers and percentages) and produce the remainder of
the *Del Monte* Expert Report.

## CONCLUSION

For the foregoing reasons, Dongguk University respectfully requests that this Court enter an order allowing Dongguk to intervene in the *Del Monte* case for the limited purpose of challenging Del Monte's assertion that Dr. Simonson's expert report is confidential under the Court's Protective order.  Dongguk further requests that the Court review a complete unredacted copy of the *Del Monte* Expert Report *in camera* to determine whether any redacted portion of the report should be treated as confidential under the Protective Order and that the non-confidential portion of that report be produced to Dongguk.

Dated:  August 17, 2011

**McDERMOTT WILL & EMERY LLP**

By: _Robert A. Weiner_

Robert A. Weiner
Audrey Lu
340 Madison Avenue
New York, New York 10173
Phone: 212-547-5400
Fax: 212-547-5444
*Attorneys for Plaintiff Dongguk University*

Of Counsel:

Ira Grudberg
Jacobs, Grudberg, Belt, Dow & Katz PC
350 Orange Street
New Haven CT 06511
Phone: 203-951-3720
Fax: 203-772-1691
Email: igrudberg@jacobslaw.com

10

# APPENDIX A

Page 1

Not Reported in F.Supp.2d, 2010 WL 779314 (S.D.N.Y.)
(Cite as: 2010 WL 779314 (S.D.N.Y.))

**H**
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
S.D. New York.
INTERNATIONAL EQUITY INVESTMENTS,
INC., et al., Plaintiffs,
v.
OPPORTUNITY EQUITY PARTNERS LTD., et al., Defendants,
Brasil Telecom, S.A., Movant,
Citibank N.A., et al., Counter Defendants,
Luis Roberto Demarco Almeida, Intervenor,
opportunity Equity Partners Ltd., Counter Claimant,
v.
Citigroup Venture Capital Int'l Brazil, LLC, On behalf of itself and Citgroup Venture Capital Int'l Brazil, L.P. (f.k.a. CVC/Opportunity Equity Partners, L.P.), et al., Counter Defendants.

No. 05 Civ. 2745(JGK)(RLE).
March 2, 2010.

**MEMORANDUM OPINION & ORDER**
RONALD L. ELLIS, United States Magistrate Judge.

**I. INTRODUCTION**
*1 Before the Court is a motion by non-party Luis Roberto Demarco Almeida ("Demarco") to intervene under Rule 24(b) of the Federal Rules of Civil Procedure to modify a confidentiality order and gain access to sealed documents. For the following reasons, Demarco's motion to intervene is **GRANTED,** but permission to modify the confidentiality order is **DENIED.**

**II. BACKGROUND**
The underlying action involved now-settled litigation between Plaintiffs International Equity Investments, Inc., and Citigroup Venture Capital In-

ternational Brasil, LLC, on behalf of itself and Citigroup Venture Capital International Brasil, LP (collectively, "Citigroup") and Defendants Opportunity Equity Partners, Ltd.; Daniel Dantas; Arthur Carvalho; Opportunity Fund; and Opportunity Prime Investment Services, Ltd. (collectively, "Opportunity"). Demarco has no claim to assert in the underlying action. He seeks only to unseal certain documents that Citigroup and Opportunity filed with the Court in the underlying civil litigation, and that were designated "Confidential" or "Attorneys' Eyes Only" pursuant to a stipulated confidentiality order.[FN1]

> FN1. An amended order was entered on March 17, 2006, and incorporated the language of the original September 6, 2005 order. The amended order added the "Attorneys' Eyes Only" designation.

Demarco, a shareholder and former director of Opportunity Equity Partners, Ltd., currently resides in Brazil and has been involved in litigation against Citigroup or Opportunity in the New York state court, Brazil, England and the Cayman Islands since early 1999. Demarco seeks access to the documents for use in his defense in Brazilian civil litigation initiated by Opportunity Equity Partners, Ltd., and in connection with his role as a prosecution assistant in criminal proceedings against Opportunity Defendant Dantas in Brazil. He also seeks to ensure that the Parties "do not obtain an adjudication based on representations different from the representations being made to the court in Brazil." (Mem. of Law in Support of Mot. of Nonparty Luis Roberto Demarco Almeida to Intervene in Order to Seek Unsealing of Documents ("Demarco Mem.") 4, Apr. 4, 2008.)

Demarco seeks to unseal all of the documents filed in support of, and in opposition to, Citigroup's February 6, 2008 motion for a preliminary injunction.[FN2] The underlying litigation between Citigroup and Opportunity was ongoing at the time De-

Not Reported in F.Supp.2d, 2010 WL 779314 (S.D.N.Y.)
(Cite as: 2010 WL 779314 (S.D.N.Y.))

marco filed his motion to intervene but has since settled. Demarco's request focuses on Opportunity's submissions and specifically identifies only one-the Kroll Report. Apparently, Brasil Telecom initiated an investigation, conducted by Kroll, Inc., against Telecom Italia, as part of an ongoing telecommunication dispute in Brazil. Opportunity was a controlling shareholder of Brasil Telecom at the time of the investigation. Demarco claims that Kroll illegally obtained information from him, and included it in the Kroll Report. (Affirmation of Andrea Bierstein in Sup. of Mot. of Luis Roberto Demarco Almeida to Intervene ("Bierstein Affirmation") ¶ 10, Apr. 4, 2008.) Even though both Demarco and the Brazilian courts have obtained a copy of the report, Demarco has pursued intervention to obtain Opportunity's copy because he believes it may be a different version.

> FN2. Demarco's notice of motion and initial memorandum request the preliminary injunction documents only. His attorney's affidavit includes a request for documents attached to two other motions. (Affirmation of Andrea Bierstein in Supp. of Mot. of Luis Roberto Demarco Almeida to Intervene ("Bierstein Affirmation") 1, April 4, 2008 (identifying Plaintiffs' March 19, 2008 motion for a protective order and their November 7, 2007 motion to compel discovery).) However, Demarco's reply confirms his initial request. As such, the Court considers Demarco's motion to intervene and unseal documents as referring only to the preliminary injunction documents.

*2 Demarco's request for the remaining documents,[FN3] which relate to the business dealings between Opportunity, Citibank, Telecom Brasil and Telecom Italia, was prompted by his belief that some of them were stolen from him during the Kroll investigation. (Bierstein Affirmation ¶¶ 10, 11, 15.) He argues that they are necessary to defend the civil allegations and to compare the filings here

to representations made by Opportunity in the Brazilian proceedings.

> FN3. The documents include letters from Opportunity's counsel that contain internal financial information and excerpts of depositions that relate to the internal corporate structure of both Parties, and business dealings related to the "Highlake transaction." (Opportunity Defs.' Supplemental Submission in Opp'n to Non-Party Luis Roberto Demarco Almeida's Mot. to Intervene in Order to Unseal Documents ("Defs. Supplemental in Opp'n) 7; Pls.' Sur-Reply in Opp'n to Non-Party Luis Roberto Demarco Almeida's Mot. to Intervene in Order to Seek Unsealing of Documents ("Pls.' Sur-Reply") 4-6.)

### III. DISCUSSION

Opportunity and Citigroup characterize Demarco's motion to intervene as an improper attempt to avoid discovery limitations in litigation pending in other jurisdictions. They assert that it "is presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." *AT & T Corp. v. Sprint Corp.,* 407 F.3d 560, 562 (2d Cir.2005) (quoting *S.E.C. v. TheStreet.com,* 273 F.3d 222, 230 (2d Cir.2001). Though some cases treat the motion to intervene and to unseal documents as a single question, the intervention and the unsealing raise distinct issues. *See id.* at 561.

### A. Permissive Intervention for the Purpose of Modifying a Protective Order

Federal Rule of Civil Procedure 24(b) provides: "On a timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." It is well-settled that "permissive intervention is the proper method for a nonparty to seek modification of a protective order." *AT & T Corp.,* 407 F.3d at 562; *see Martindell v. Int'l Tel. & Tel. Corp.,* 594 F.2d 291, 293-94 (2d Cir.1979) (noting that permissive inter-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 779314 (S.D.N.Y.)
**(Cite as: 2010 WL 779314 (S.D.N.Y.))**

vention is the proper procedure for "obtaining vacation or modification of the protective order"); *see also The Diversified Group, Inc. v. Daugerdas,* 217 F.R.D. 152, 157 (S.D.N.Y.2003). A district court has broad discretion when considering permissive intervention, but "must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *AT & T Corp.,* 407 F.3d at 561-62 (quoting Fed. R.Civ. P. 24(b)). The purpose of Rule 24(b)'s timeliness requirement, however, is "to prevent prejudice in the adjudication of the rights of the existing parties, a concern not present when the existing parties have settled their dispute and intervention is for a collateral purpose." *Diversified Group, Inc.,* 217 F.R.D. at 158 n.4 (quoting *United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424, 1427 (10th Cir.1990) (allowing intervention three years after case settled because intervention "was for the sole purpose of challenging a protective order")).

Rule 24(b) is to be construed liberally and "is satisfied when, despite factual differences between the parties, a common question of law is involved." *German v. Federal Home Loan Mortg. Corp.,* 899 F.Supp. 1155, 1166 (S.D.N.Y.1995) (citing *Davis v. Smith,* 431 F.Supp. 1206, 1209 (S.D.N.Y.1977)) (internal quotations omitted). Opportunity and Citigroup contend that the liberal construction does not apply when the court is considering the narrow question of modification of a protective order to "access to confidential materials" (Pls.' Mem. of Law in Opp'n to Non-Party Luis Roberto Demarco Almeida's Mot. to Intervene in Order to Seek Unsealing of Documents ("Pls.' Mem.") 4 n.3; Opportunity Defs.' Mem. in Opp'n to Non-Party Luis Roberto Demarco Almeida's Mot. to Intervene in Order to Unseal Documents ("Defs.' Mem.") 5 n.3.) The Court disagrees. While both Plaintiffs and Defendants seek to shift the Court's focus to the ultimate goal of preventing modification, they address the problem from the wrong direction. A movant cannot seek modification of the protective order unless the Court permits him to intervene. Here, the underlying litigation has settled. Intervention for

the limited purpose of modifying a protective order will not unduly delay or prejudice the adjudication of the original Parties' rights. Demarco's motion to intervene is therefore **GRANTED.**

**B. Modification of the Confidentiality Order**

**\*3** Rule 26(c) of the Federal Rules of Civil Procedure authorizes courts, for good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way .... " Fed.R.Civ.P. 26(c). These protective orders are subject to modification, and "[w]hether to lift or modify a protective order is a decision committed to the sound discretion of the trial court." *In re Agent Orange" Prod. Liab. Litig.,* 821 F.2d 139, 147 (2d Cir.1987). Although Demarco appears to concede that the materials sought ars not judicial documents, his position is not entirely clear.

**1. Standard for Modification of a Protective Order**

Generally, there is a strong presumption against modification of a protective order. "Where there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) 'absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need.' " *S.E.C. v. TheStreet.com,* 273 F.3d 222, 229 (2d Cir.2001) (quoting *Martindell,* 594 F.2d at 296. When parties reasonably rely on a protective order, especially by waiving their Fifth Amendment rights and testifying or by producing documents that would not exist but for the protective order, the Second Circuit has been "hesitant to permit modifications that might unfairly disturb the legitimate expectations of the parties or deponents." *In re: Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation,* 255 F.R.D. 308, 318 (D.Conn.2009) (*quoting TheStreet.com,* 273 F.3d at 230) (internal quotations omitted).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 779314 (S.D.N.Y.)
(Cite as: 2010 WL 779314 (S.D.N.Y.))

### a. The Documents Sought Are Not "Judicial," and No Presumption of Access Exists

Opportunity and Citigroup argue-and Demarco effectively concedes-that the documents Demarco seeks are not "judicial documents." (Reply Mem. of Law in Further Supp. of Mot. of Non-Party Luis Roberto Demarco Almeida to Intervene in Order to Seek Unsealing of Certain Documents ("Demarco Reply") 1, May 1, 2008.) Judicial documents, "entitled to a presumption of public access, are items filed with the court that are relevant to the performance of the judicial function and useful in the judicial process." *TheStreet.com,* 273 F.3d at 231 (quoting *United States v. Amodeo,* 44 F.3d 141, 145 (2d Cir.1995) ( *"Amodeo I"* ) (internal quotations omitted). This Court must determine whether the documents sought are "judicial documents" and should therefore be categorically excluded from *Martindell's* strong presumption against access to sealed documents. The "mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *United States v. Amodeo,* 44 F.3d 141, 145 (2d Cir.1995) ( *"Amodeo I"* ). Rather, the document must be "relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." *Id.* at 145. As such, the presumption of access afforded to documents filed with the court varies with their relevance to the parties' substantive rights. Specifically, whether protected documents "fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *United States v. Amodeo,* 71 F.3d 1044, 1049 (2d Cir.1995) ( *"Amodeo II"* ). While documents "material to a court's disposition of a case on the merits" carry a strong presumption of access, documents exchanged by parties during discovery have the weakest presumption of access. *Diversified Group,* 217 F.R.D. at 158-59; *Amedo II,* 71 F.3d at 1050.

**\*4** In this case, the documents Demarco seeks were not used by the Court to make any substantive

rulings. While it is true that some of the documents were attached to a motion for a preliminary injunction, that motion became moot when the Parties entered a stipulation that resolved the issue raised in the motion. (Doc, No. 606, Mar. 21, 2008.) Thus, the Court did not use these documents to make a substantive determination. Because the targeted documents do not fall within the category of judicial documents, Demarco has no presumptive right of access.

### b. The *Martindell* Presumption Against Modification is Not Applicable

Opportunity and Citigroup contend that a presumption against the modification of the confidentiality order, rather than a presumption of access, should apply. Relying on *Martindell v. Int'l Tel. & Tel. Corp.,* they argue that they "should be entitled to rely upon the enforceability of a protective order against any third parties." 594 F.2d 291, 296. They maintain that there is "a strong presumption against public access" because they "reasonably relied on the protective order." *TheStreet.com,* 273 F.3d at 234.

In determining whether a party reasonably relied on a protective order, the court should consider four factors: (1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order. *EPDM,* 255 F.R.D. at 318. The court should also consider the proposed intervener's purpose in seeking the modification and the type of materials sought. *Id.* at 318-19.

Opportunity and Citigroup argue that *Martindell* should apply because the confidentiality order was not improvidently granted, and Demarco has failed to offer a compelling need or extraordinary circumstance that overcomes the *Martindell* presumption. In contrast, Demarco argues that, because of the "umbrella" nature of the confidentiality order and the attendant lack of court intervention in designating confidential materials, Opportunity and Citigroup failed to show good cause

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 779314 (S.D.N.Y.)
(Cite as: 2010 WL 779314 (S.D.N.Y.))

upon issuance of the stipulated confidentiality order. (Demarco Reply 1-2.) [FN4] Thus, under Demarco's theory, lack of good cause is an extraordinary circumstance that overcomes *Martindell* 's presumption and warrants modification.

> FN4. In his initial notice of motion and memorandum, Demarco argued that he was entitled to a presumptive right of access to the materials because they should be classified as judicial documents. Only in his reply memorandum does he address *Martindell*'s, standard for modifying a protective order.

Opportunity and Citigroup argue that stipulated, umbrella confidentiality orders are not per se improvident even if good cause was not shown. The Court agrees. Demarco may, however, demonstrate that Opportunity and Citigroup cannot *reasonably rely* on their confidentiality order if there was no good cause shown. *See Agent Orange,* 821 F.2d at 147-48; *The Street. com,* 273 F.3d at 231.

**(1) Scope**

A key consideration for assessing reasonableness is whether the protective order is an "umbrella" blanket-type order, or a targeted protective order. Umbrella orders, and especially stipulated protective orders, give the parties wide berth to give sweeping protection to most or all material produced in the litigation. While umbrella orders, granted as an accommodation to the parties, may be useful and expeditious in large scale litigation, *see Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1122 n.18, 1123 (3d Cir.1986), they can simultaneously be overbroad and abusive. *See Schiller v. City of New York,* 04 Civ. 7922(KMK) (JCF), 2007 WL 136149, at *19 (S.D.N.Y. January 19, 2007); *EPDM,* 255 F.R.D. at 319-20 (noting that "blanket protective orders ... are by nature overinclusive and ... peculiarly subject to later modification," and that "[s]tipulated blanket orders are even less resistant to a reasonable request for modification") (internal quotations and citations omitted). "A protective order granted on the basis of a stipulation by the

parties carries less weight than a protective order granted after a hearing to show good cause." *EP-DM,* 255 F.R.D. at 321; *see also Fournier,* 242 F.Supp.2d at 341) (citing *Agent Orange,* 821 F.2d at 147-48). By contrast, targeted protective orders designate specific documents after a request for confidentiality, and are typically granted by a court after a good cause hearing. *See, e.g., Martindell,* 594 F.2d at 292-93 (protective order applied only to the transcripts of twelve deponents).

*5 Here, the confidentiality order is a stipulated umbrella order under which the Parties had free reign to designate confidential any and all documents, including "things belonging to or concerning a party," upon a good faith showing only. (Amended Confidentiality Stipulation and Order ("Amd.CO") ¶ 2, Mar. 24, 2006.) [FN5] The order allowed either party to retroactively designate materials that were produced prior to the order's issuance. The order is particularly broad and not foucused on any narrow set of materials, and it allows unilateral designation by the Parties without court intervention. [FN6] As such, it is dissimilar to the protective order in *Martindell* and more closely resembles protective orders that have been modified, in part because of their expansive scope. *See Fournier,* 242 F.Supp.2d at 341-42; *Schiller,* 2007 WL 136149, at *19.

> FN5. According to the Amended Confidentiality Stipulation and Order, " 'CONFIDENTIAL' documents, information or things are those that constitute, reflect or contain trade secrets or non-public, proprietary or business-sensitive information or things belonging to or concerning a party and that a party designates in good faith as 'CONFIDENTIAL.' " (Amd. CO ¶ 2.)

> FN6. The Confidentiality Order states: "[d]ocuments, information, and things produced by a party during the course of this litigation ... may be designated by such party as 'CONFIDENTIAL' at the time of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 779314 (S.D.N.Y.)
**(Cite as: 2010 WL 779314 (S.D.N.Y.))**

production. After such time, a document, information, or thing may be designated as 'CONFIDENTIAL' in writing, by any party, provided that any such designation shall be within a reasonable time after disclosure." (Amd. CO ¶ 3a.)

## (2) Express Language

"Where a protective order contains express language that limits the time period for enforcement, anticipates the potential for modification, or contains specific procedures for disclosing confidential materials to non-parties, it is not reasonable for a party to rely on an assumption that it will never be modified." *EPDM,* 255 F.R.D at 320; *TheStreet.com,* 273 F.3d at 231. The order at issue here contains conflicting provisions regarding the temporal application of confidentiality that suggest opposing levels of reliance. The presiding judge signed and stamped the original September 6, 2005 confidentiality order with the following language: "Notwithstanding anything to the contrary herein, any papers filed under seal in this action may be made part of the public record on or after 9/6, 2010, unless the Court otherwise orders." (Confidentiality Stipulation and Order ("Original CO") 12, Sept. 6, 2005.) Further, the order "does not govern proceedings during trial." (*Id.* ¶ 1.) Because the order is time limited, applicable to pretrial litigation only, and the litigation in this case has ended, the Parties' continued reliance is less consequential. On the other hand, the confidentiality order provides specific instructions to the Parties and the Clerk of the Court regarding destruction or, alternatively, the return of confidential materials upon the termination of litigation. (Original CO ¶ 13.) These instruction suggests that the Parties sought to keep the designated material confidential indefinitely.

Second, the language indicates that the Parties anticipated the potential for modification. The reasonableness of the Parties' indefinite reliance on a confidentiality order is diminished if they plan for its modification. *See, e.g., Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 126 (2d Cir.2006); *Al-*

len *v. City of New York,* 420 F.Supp.2d 295, 301 (S.D.N.Y.2006). This confidentiality order permits the Parties to challenge a designation and, if a dispute arises, to seek court intervention to "remove or change" a particular document's designation. (Original CO ¶ 6.) Further, the confidentiality order does not limit a party's right to seek judicial modification of the order. (*Id.* ¶ 11.)

**\*6** Additionally, Plaintiffs actually sought modification of the original confidentiality order to add an "Attorneys' Eyes only" classification. *Allen,* 420 F.Supp.2d at 301 (noting that reliance was not reasonable where the Court stated that "the plaintiffs could seek to have the Court revisit its ruling as to confidentiality"). The order approving the classification shows that the court contemplated the potential for modification if a party challenged the designation, stating *"the Court will determine whether there is good cause for the classification."* (Order, March 17, 2006.) (emphasis added). Moreover, the Parties stipulated to expand the confidentiality order to include new defendants who were added after the prior orders had been entered. (Order Concerning Confidentiality, July 9, 2007.)

Finally, the confidentiality order contains specific procedures for disclosing confidential materials to non-parties. *See EPDM,* 255 F.R.D. at 321. While the order appears to limit disclosure to non-parties for litigation purposes only, it states: "Such [confidential] documents ... shall be used for no other [non-litigation] purpose unless and until agreed to in writing by all parties to this action or authorized by order of the Court." (Amd. CO ¶ 3(i).) Thus, non-parties were permitted to access the confidential information, and modify the order, with consent of the Parties or with a court order.

Together, the time limits, potential for modification, and the procedures for disclosing information to non-parties weigh against reasonable reliance. Though the provisions do not completely undercut the Parties' reliance, on balance, the language substantially reduces the reasonableness of the Parties to rely on the order for "absolute, and unchanging

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 779314 (S.D.N.Y.)
**(Cite as: 2010 WL 779314 (S.D.N.Y.))**

confidentiality." *EPDM,* 255 F.R.D. at 321.

### (3) Level of Inquiry by the Court Prior to Granting Order

The amount of consideration that an issuing court has given to the protective order affects the presumption against its modification. "A protective order granted on the basis of a stipulation by the parties carries less weight than a protective order grantee, after a hearing to show good cause," where the court's inquiry is substantial. *EPDM,* 255 F.R.D. at 321; *Fournier,* 242 F.Supp.2d at 341. Citigroup and Opportunity argue that Demarco "has not overcome the presumption of unfairness of modifying the protective order [that has been] reasonably relied on by the parties." (Pls.' Mem. in Opp'n 2 (internal quotations omitted); *see* Defs.' Mem. in Opp'n 5.) The fact that a court has entered a stipulated protective order, however, does not automatically affirm the parties' reasonable reliance on the order for the indefinite protection of each item. *See Lugosch,* 435 F.3d at 126. Further, the presumption, as well as the extraordinary circumstances exception, also contemplates the court having held a hearing to show good cause. *See, e.g., TheStreet.com,* 273 F.3d at 226. Applying the presumption to all protective orders without regard to the parties' unilateral control to designate or the court's level of inquiry could "shield stipulated, all-encompassing orders from ever receiving the type of court review contemplated by Rule 26(c)," i.e., good cause shown. *EPDM,* 255 F.R.D. at 322; *Fournier,* 242 F.Supp.2d at 343-44. Indeed, a court's discretion to modify a protective order would be undermined by a categorical application of the *Martindell* presumption to stipulated umbrella orders.

*7 Here, the Court "So Ordered" the stipulated confidentiality order without a good cause hearing or the opportunity to review the protected materials. The Parties had unilateral control over which materials were selected for confidentiality, and there are no apparent limitations on the types of materials subject to the order. While some categories of materials seem particularly suited to protection, such as "documents ... that constitute, reflect or contain trade secrets or non-public, proprietary or business-sensitive information," this confidentiality order also includes a category for "things belonging to or concerning a party." (Amd. CO ¶ 2). The confidentiality order, however, does not list specific documents or provide narrowed categories of documents that may be protected.

The Court's role was largely circumscribed to prospective intervention. For example, the confidentiality order states that a party "may" request an *in camera* review to appropriately designate a hearing transcript as confidential. (Amd. CO ¶ 3f.) A party may also seek a court order to lift a confidential designation. (*Id.* ¶ 6(c).) Indeed, the Court's most searching inquiry was in response to the request to add an "attorneys' eyes only classification," under which the Parties would also unilaterally designate materials. Good cause had not been shown for any of the documents, and the Court would only intervene to "determine whether there is good cause" if a *party challenged* the classification. (Order, Doc No. 262, March 17, 2006 (emphasis added).) The Court's actual level of inquiry did not interfere with the Parties' expansive control to designate materials protected.

Therefore, the Parties' reliance on the confidentiality order is diminished and the application of the *Martindell* presumption is undermined because this confidentiality order was the result of a stipulation, the Parties had broad unilateral control to designate almost any material confidential without court inquiry, and there was no good cause shown upon granting the order.

### (4) Nature of Reliance

Opportunity and Citigroup's reliance on the confidentiality order was not completely unreasonable. However, the nature of the information protected diminishes the degree of reasonableness that the Court should impart to the Parties: that is, whether the stipulation solved a major discovery dispute and allowed discovery to proceed, or, in

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

contrast, whether the court might have compelled production of the protected materials regardless of the stipulation. "The classic situation in which a party 'relies' on a protective order is where the party creates material during the course of litigation on the understanding that it will be kept confidential-for example, by signing a settlement document or by giving confidential testimony." *EPDM,* 255 F.R.D. at 322-23 (quoting *Allen,* 420 F.Supp.2d at 300-01 (internal citations omitted)). "Conversely, where the parties have not given up any rights and indeed would have been compelled to produce the discovery materials even in the absence of a protective order, the presumption against modification is not as strong." *EPDM,* 255 F.R.D. at 323.

**\*8** Some factors support the notion that the Parties reasonably relied on the stipulation. First, Plaintiffs' successful request to add an "attorneys' eyes only" designation after two years of litigation indicates that the Parties wanted to increase the level of protection to prevent the opposing litigants from viewing sensitive material, and appears to evidence their reluctance to produce additional materials without those added protections. Second, the non-public information produced is the type of material that often becomes the subject of confidentiality orders. Indeed, a degree of reliance on the confidentiality order was reasonable in light of the type of litigation and the claims asserted.

Other factors suggest that their reliance was unreasonable. If the internal, financial and trade secret information was particularly relevant to the claims in the now-settled suit, those materials would have been discoverable and subject to a motion to compel, a circumstance that diminishes the reasonableness of the Parties' reliance. A motion was in fact filed before the stipulation of settlement.

On balance, the Court finds that the Parties' reliance on the order was not unreasonable given the nature of the litigation. Nevertheless, the Parties' reliance was not so overwhelming as to warrant the indefinite application of *Martindell* 's strong pre-

sumption against modification because the order's broad scope and express language, and the minimal level of court inquiry outweigh the Parties' reliance. Instead, in the absence of a good cause showing, the Parties' were entitled to rely on its protection to the extent that a party (or intervenor, as is the case here) could make a good faith, legitimate challenge to the protective designation. (*See* CO ¶ 6c.)

### c. Demarco's Purpose in Seeking the Documents is Not a Compelling Need That Justifies Modification

The intervenor's purpose in seeking the documents is another important factor when considering a request to modify. Specifically, the court may consider whether the intervenor can obtain the materials through his own discovery initiative and whether the purpose for modification is to give the public access to the materials. *EPDM,* 255 F.R.D. at 324; *see TheStreet.com,* 273 F.3d at 233. In *EPDM,* where the court permitted limited modification subject to the existing protective order, the intervenor was "the lead plainliff in a collateral Canadian class action suit against EPDM suppliers." *EPDM,* 255 F.R.D. at 313. The collateral suit was "essentially" the same antitrust price fixing claim and both cases arose "out of the same nucleus of operative facts." *Id.* There, the intervenor specifically sought modification to avoid duplicative discovery. *Id.* at 314.

The documents attached to the preliminary injunction motion involved a version of the Kroll Report and documents related to the Highlake transaction. (*See* Defs.' Opp'n 4.) Opportunity and Citigroup maintain that the documents were properly designated because they contain confidential information related to their internal business dealings, and argue that Demarco has no compelling need to gain access to them.[FN7] Demarco seeks these documents for use in his defense in Brazilian civil litigation initiated by Opportunity, Ltd, and in connection with his role as a prosecution assistant in Brazilian criminal proceedings against Opportunity Defendant Dantas. (Demarco Mem. 1.)

Not Reported in F.Supp.2d, 2010 WL 779314 (S.D.N.Y.)
**(Cite as: 2010 WL 779314 (S.D.N.Y.))**

FN7. While Citigroup has indicated that it is "prepared" to unseal certain documents, they also maintain that the materials at issue were designated in good faith. (Pls.' Sur-Reply 6.) Their willingness to unseal these documents is further indication that it was unreasonable for the Parties to expect the confidentiality order to endure indefinitely. Nevertheless, Citigroup's position does not affect Demarco's reasons for seeking modification.

**\*9** Unlike the intervenor in *EPDM,* Demarco's purposes for seeking modification are too attenuated and dissimilar from the underlying claims in this case to justify modifying this confidentiality order. Demarco's reasons provide no basis for the Court to find that he seeks to give the public access to the documents, or to litigate in the public's interest, as might be the case in an antitrust suit. Demarco's role in pending foreign litigations is not a compelling reason for modification. At best, his role permits him to seek intervention, and, at worst, he appears to be using his purported status to avoid discovery limitations that he has encountered in Brazil. Demarco's alleged need for discovery, however his role is described, would require this Court to engage in a fairly significant inquiry into the rules and limits of discovery in the various foreign locations to determine the propriety of his request.

Demarco's role as prosecution assistant does not establish a need. The title merely gives him "the right to apply for all means of evidence." (Affirmation of Marcelo Elias in Supp. of Mot. of Luis Roberto Demarco Almeida to Intervene ¶¶ 2-3, May 1, 2008 (citing a translation of Brazilian Criminal Process Code § 271).) Indeed, Demarco's "right" may be limited to use in Brazilian courts only. To the extent that documents filed in this case are relevant to the Brazilian prosecution, Demarco may *apply* for such documents, and the Court assumes that such an application has been made. (*See id* . ¶¶ 8-9.) But the right to apply is not, by itself, a compelling need. Also, the Court would essentially have to assess the relevance of the documents to the Brazilian litigation and prosecution. Yet, that task should be precisely reserved for judges in Brazil.

Demarco does not state whether he can obtain the discovery from the Parties via Brazilian discovery procedures. Before seeking this Court's assistance, Demarco must demonstrate that he has availed himself of available procedures and that his motion here is not an attempt to avoid discovery limitations in Brazil. This appears to be the conclusion in Demarco's attempt to use a state court forum to exercise his status as a prosecution assistant. (*See* Pls.'Opp'n at 3; Decl. Of Michael J. Byars, Ex. A, April 24, 2008 (Hearing transcript, N.Y. Supreme Court, Justice Ramos, Sept. 19, 2006).) In any case, the Brazilian litigation should address whether crimes against Demarco have occurred.

Demarco also seeks access to the documents to ensure that the Parties to this case "do not obtain an adjudication based on representations different from the representations being made to the court in Brazil." Because this case has settled, and there will be no adjudication, Demarco's concern about the Parties' representations are moot.

### IV. CONCLUSION
Opportunity and Citigroup's confidentiality order does not warrant the application of a strong presumption against modification. Instead, after balancing the Parties' interests, the reasonableness of their reliance on the confidentiality order, the order itself, and the intervenor's purpose for seeking modification, Demarco is not entitled to modify the confidentiality order to assist litigation in Brazil. For the foregoing reasons, Demarco's motion to intervene is **GRANTED**, but permission to modify the confidentiality order is **DENIED.**

**\*10 SO ORDERED.**

S.D.N.Y.,2010.
International Equity Investments, Inc. v. Opportunity Equity Partners Ltd.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 779314 (S.D.N.Y.)
**(Cite as: 2010 WL 779314 (S.D.N.Y.))**

Not Reported in F.Supp.2d, 2010 WL 779314
(S.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.