Kenneth A. Plevan
Anthony J. Dreyer
Lauren E. Aguiar
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Tel:  (212) 735-3000

Attorneys for Plaintiff Fresh Del Monte Produce Inc.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**FRESH DEL MONTE PRODUCE INC.,**          :

               **Plaintiff and**          :          08 Civ-8718(SHS)
               **Counterclaim Defendant,**

                              :          **ECF Case**

          **- against -**          :          **Electronically Filed**

**DEL MONTE FOODS COMPANY, and**
**DEL MONTE CORPORATION,**          :

               **Defendants and**          :
               **Counterclaim Plaintiffs.**

                              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# PLAINTIFF FRESH DEL MONTE PRODUCE INC.'S
## PROPOSED JURY INSTRUCTIONS AND VERDICT FORM

## **Preliminary Statement**

In accordance with the Court's Individual Rule 3(B)(i) and its November 2, 2011 Order (Dkt. No. 81), Plaintiff Fresh Del Monte Produce Inc. respectfully submits its proposed jury instructions and verdict form regarding its causes of action against Defendants Del Monte Foods Company and Del Monte Corporation for false advertising under the Lanham Act, 15 U.S.C. § 1125 et al., and breach of contract and unfair competition under New York common law.

Should the Court request any additional proposed jury instructions with respect to either general issues (such as burdens of proof or expert testimony) or case-specific issues, Fresh Del Monte will promptly provide them.

## 1.   <u>Nature of the Action and the Parties (Preliminary Instruction)</u>

Before the trial begins, I am going to give you a very general overview of the parties in this case, and the issues that you will be asked to resolve.

The Plaintiff is Fresh Del Monte Produce, Inc., who I will refer to as "Fresh Del Monte," and the Defendants are Del Monte Foods Company and Del Monte Corporation, who I will refer to collectively as "Del Monte Foods."

Some of you may be familiar with the "Del Monte" brand.  What you may not know, however, is that more than one company in the United States uses the "Del Monte" name on their products.   Both Fresh Del Monte and Del Monte Foods have certain exclusive rights to use the "Del Monte" name and related trademarks on different types of products.  In other words, there are certain products that only Fresh Del Monte can sell under the "Del Monte" name and trademarks, and certain products that only Del Monte Foods can sell under that name and trademarks.  Exactly who has what rights is set forth in a contract between the two parties.

Fresh Del Monte has asserted three separate and distinct claims against Del Monte Foods.  First, Fresh Del Monte alleges that Del Monte Foods falsely advertised, packaged, labeled, and marketed certain cut fruit products in violation of a federal statute known as the Lanham Act, which provides marketers of products and services the right to challenge a competitor's conduct in federal court.  Second, Fresh Del Monte alleges that Del Monte Foods' conduct also violates New York's law of unfair competition.  Third, Fresh Del Monte alleges that Del Monte Foods breached the parties' contract with one another by selling certain fruit products under the "Del Monte" name.  Fresh Del Monte seeks recovery of monetary damages that it says were caused by Del Monte Foods' alleged false advertising and breach of contract.

[Del Monte Foods has asserted two separate and distinct counterclaims against Fresh Del Monte.  First, Del Monte Foods alleges that Fresh Del Monte breached the parties' contract by selling and marketing certain products pairing fresh fruit with processed components such as dips, including by failing to provide written notice of its intent to introduce those products and samples of those products to Del Monte Foods after being requested to do so. Second, Del Monte Foods alleges that Fresh Del Monte's sale of those products also infringed Del Monte Foods' trademark.][1]

After hearing the evidence put forth by the parties and my instructions, you will be asked to determine whether Fresh Del Monte [and/or Del Monte Foods] has established any of their assertions and claims, and, if so, the amount of monetary damages that they should be awarded as compensation.

---

[1] The bracketed portion can be removed if Del Monte Foods' counterclaims have been withdrawn.

## 2.    <u>Summary of the Parties' Contentions</u>

I will first give you a general summary of the contentions in this case.  I will then provide you with detailed instructions on what must be proven by a preponderance of the evidence for the Plaintiff to prevail on its claims[, or for the Defendants to prevail on their counterclaims].[2]  As we have throughout the trial, I will refer to the Plaintiff as "Fresh Del Monte" and the Defendants as "Del Monte Foods."

As I previously told you, Fresh Del Monte seeks monetary damages from Del Monte Foods for three separate and distinct claims: the first is for false advertising under federal law called the Lanham Act, the second is for violation of New York's unfair competition law, and the third is for breach of the parties' contract with one another.

Fresh Del Monte's false advertising claim under federal law and New York's unfair competition law are based on its contention that Del Monte Foods has advertised and sold certain of its cut fruit products in a manner that misleads customers into believing that the products are fresh.  Specifically, Fresh Del Monte contends that Del Monte Foods deceptively packaged, labeled, and marketed the Sunfresh, Orchard Select, Fruit Naturals, Superfruit, and Fruit Bowl cut-fruit product lines.  Del Monte Foods disputes that any of these products have been marketed or sold in a misleading or deceptive manner.

Fresh Del Monte's breach of contract claim is based on its contention that the contract in force between the parties -- which I will refer to as the "Agreement" – gives Fresh Del Monte the exclusive right to sell refrigerated pineapple, papaya, berry, banana, and melon products under the "Del Monte" name and trademarks, regardless of whether those products are

---

[2]    The bracketed portion can be removed if Del Monte Foods' counterclaims have been withdrawn.

processed.  It is not disputed that Del Monte Foods has sold refrigerated cut-fruit products

containing one or more of these fruits.  However, Del Monte Foods disagrees with Fresh Del

Monte's interpretation of the Agreement, and contends that Fresh Del Monte only has the

exclusive rights to sell refrigerated products containing pineapple, papaya, berry, banana and

melon under the "Del Monte" name and trademarks when those products are fresh – that is, not

processed.

      [Del Monte Foods has asserted counterclaims based on Fresh Del Monte's sale of

"medley" products that pair Del Monte-branded fresh fruit and fresh vegetable products with

separately branded and packaged processed foods (such as dips and salad dressings).  Del Monte

Foods first asserts that sale of the "medley" products violates certain provisions of the

Agreement, including its allegation that Fresh Del Monte failed to provide Del Monte Foods

with samples of those products and written notice of its intent to introduce those products.

Second, Del Monte Foods asserts that sale of "medley" products using the "Del Monte" name

constitutes an infringement of its trademarks.][3]

      I will now instruct you on the law you must follow in making your determinations.

---

[3]   The bracketed portion can be removed if Del Monte Foods' counterclaims have been
withdrawn.

### 3.      Elements of False Advertising Lanham Act Claim

Fresh Del Monte's first claim is that Del Monte Foods falsely advertised its cut fruit products in the SunFresh, Orchard Select, Fruit Naturals, Superfruit, and Fruit Bowl product lines.

The federal statute permitting a marketer of products and services to challenge advertising claims of a competitor is known as the Lanham Act.  The Lanham Act provides recourse to a party damaged or likely to be damaged by the acts of any person who, in connection with the sale of goods and services, uses a "false or misleading representation of fact" that "misrepresents the nature, characteristics, [or] qualities of his or her or another person's goods, services, or commercial activities."

To prevail on a claim that a competitor's advertising was false or misleading, the party challenging the advertising claim must prove by a preponderance of the evidence the following five elements:

1.      The advertiser made false or misleading statements about its own or a competitor's products or services;

2.      The advertiser's false or misleading statements actually deceived or had the tendency to deceive a substantial portion of the target audience;

3.      The advertiser's deception was material in that it was likely to influence purchasing decisions;

4.      There was a likelihood of injury to the business of the challenger; and

5.      The advertising has a connection to interstate commerce.

Here, it is undisputed that the advertising challenged by Fresh Del Monte has a connection to interstate commerce, so you need not consider this element in reaching your determinations.

6

       To find in favor of Fresh Del Monte, you must find that it has established each of the first four elements by a preponderance of the evidence.  I will now discuss those four elements in more detail.

       **Authority**: 15 U.S.C. § 1125; <u>Tiffany Inc. v. eBay, Inc.</u>, 600 F.3d 93, 112-13 (2d Cir. 2010); <u>Johnson & Johnson Vision Care, Inc. v CIBA Vision Corp.</u>, 348 F. Supp 2d 165, 177-78 (S.D.N.Y. 2004); FEDERAL CIVIL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT § 13.3.1 (2009).

## 4.   Establishing that Advertising Claim Is False

The first element that Fresh Del Monte must prove to establish a Lanham Act violation is that Del Monte Foods, through its marketing, packaging, or labeling, made either false statements or misleading statements about its cut fruit products.

There are two ways to demonstrate that an advertising claim is false, also referred to as "literally false." First, an advertising message may be clear and unambiguous but simply not true. For example, an advertiser might promote an automobile as getting 30 miles per gallon in highway driving. If the facts showed that the automobile only gets 20 miles per gallon, we would say that the claim is <u>literally false</u> because in evaluating whether the claim was true or false it was not necessary to interpret the message in the advertising claim – that untrue message, 30 miles per gallon in highway driving, was clear and unambiguous.

Second, an advertisement can also be false "by necessary implication." In such a situation, no specific combination of words used is technically untrue, but the words and images of the advertising, analyzed in context, unambiguously convey a message as readily as if it had been explicitly stated, and that message is false. For example, assume that a new product sold for relief of heartburn is called "Nighttime Mylanta." If the facts showed that Nighttime Mylanta had the same formula as the original "Mylanta," we would say that the advertising message conveyed by the product name was false "by necessary implication," because although the name itself did not in so many words state that it was specially formulated for nighttime use, that message is the only fair and reasonable interpretation of the use of the term "nighttime" in the name of the product.

8

**Authority:** Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 153; 158 (2d Cir. 2007); Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 590-94 (3d Cir. 2002) (source of the "Nightime Mylanta" hypothetical discussed in the instruction); Reckitt Benckiser Inc. v. Motomco Ltd., 760 F. Supp. 2d 446, 454 (S.D.N.Y. 2011).

5.      **Misleading Claims**

        Having discussed when an advertising claim can be considered false, or literally false, I will now address when an advertising claim can be considered "misleading."  Advertising claims that are literally true may at the same time be communicating another message that is implied to members of the target audience, by the context or by the use of clever or ambiguous wording.  These are called implied messages, and the law typically requires that to prove that they are being communicated a challenger must have evidence of how consumers interpret that advertising message, typically in the form of a consumer survey.

        Misleading advertising claims differ from literally false claims in that they are ambiguous – in other words, misleading claims have two or more reasonable interpretations.  Nevertheless, one or more of the reasonable interpretations can be shown to be a misleading message if: (i) consumer survey or other evidence shows that a "substantial portion" or "statistically significant" percentage of the target audience perceive that message, and (ii) other evidence shows that the implied message is false, such as how viewers reacted to it as well as your own reactions to and analysis of the advertising.

        As an example, a pizza maker may advertise that it uses distilled water for its product and that its competitor uses tap water.  While the claim may be literally true, the advertising as a whole might also convey to consumers an implied message that the advertiser's pizza <u>tastes better</u> than the competitor's product because of its use of distilled water rather than tap water.  The competitor can prove that the advertiser has made a <u>misleading</u> claim if it shows with proper evidence that, <u>first</u>, a substantial portion of the target audience understood the advertisement to be making a "tastes better" claim, <u>and</u>, second, that the "tastes better" claim is not true, as shown for example by consumer taste tests.

**Authority**: Schering Corp. v. Pfizer Inc., 189 F.3d 218, 229 (2d Cir. 1999);

Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp., 960

F.2d 294, 298 (2d Cir. 1992); Coca–Cola Co. v. Tropicana Prods., Inc., 690 F.2d 312, 317 (2d

Cir. 1982), *abrogated on other grounds by* Fed.R.Civ.P. 52(a); POM Wonderful LLC v. Organic

Juice USA, Inc., 769 F. Supp. 2d 188, 196 (S.D.N.Y. 2011); Tiffany (NJ) Inc. v. eBay, Inc., No.

04 Civ. 4607, 2010 U.S. Dist. LEXIS 96596 at *5 (S.D.N.Y. Sept. 13, 2010); Stokely-Van Camp,

Inc. v. Coca-Cola Co., 646 F. Supp. 2d 510, 525 (S.D.N.Y. 2009); McNeil-PPC, Inc. v. Pfizer

Inc., 351 F. Supp. 2d 226, 249 (S.D.N.Y. 2005); see also Pizza Hut, Inc. v. Papa John's Int'l, Inc.,

227 F.3d 489, 501-03 (5th Cir. 2000) (source of the "pizza maker" hypothetical discussed in the

instruction).

## 6.      Context Always Relevant/Visuals

When you determine what consumer message is being conveyed by advertising, you should not examine words or phrases and visual presentation in isolation from one another, but rather consider the claim in the full context in which it appears.  The context of advertising includes the advertising in its entirety, including all of its words and visual presentations.  It also includes the commercial context, for example, characteristics of the marketplace for the products being advertised -- here, stores and displays in which the relevant products are sold – and the experience of consumers in that market with the product.

**Authority**:  Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 157-58 (2d Cir. 2007); S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d Cir 2001); Avis Rent A Car Sys., Inc. v. Hertz Corp., 782 F.2d 381, 384-85 (2d Cir. 1986); Coca-Cola Co. v. Tropicana Prods., Inc., 690 F.2d 312, 317-18 (2d Cir. 1982), abrogated on other grounds by Fed.R.Civ.P. 52(a).

## 7.    Consumer Surveys/Expert Witnesses

As noted, the standard method used to show that an implied advertising message is being communicated is by means of a consumer survey.  Fresh Del Monte has offered testimony from an expert concerning a consumer survey conducted for the purpose of examining the message conveyed by the challenged advertising.  Del Monte Foods has offered expert testimony criticizing this survey.

It is up to you, the jury, to decide what, if any, weight to give to the testimony of these expert witnesses.  With respect to determining the value, if any, of survey evidence, you may find it useful to consider whether: (1) the universe or product market was properly defined; (2) a representative sample of that universe was selected; (3) the questions asked of the interviewees were framed in a clear, precise, and non-leading manner; (4) sound interview procedures were followed by competent interviewers; (5) the data gathered was accurately reported; (6) that data was analyzed in accordance with accepted statistical principles; and (7) the objectivity of the entire process was assured.

Later in these instructions I will give you further guidance on your consideration of expert testimony offered by the parties, by survey and other experts.


**Authority:**  Schering Corp. v. Pfizer Inc., 189 F.3d 218, 225 (2d Cir. 1999); Johnson & Johnson * Merck Consumer Pharms. Co. v. Smithkline Beecham Corp., 960 F.2d 294, 298 (2d Cir. 1992); Vista Food Exch., Inc. v. Vistar Corp., No. 03 Civ. 5203, 2005 WL 2371958, at *5, (E.D.N.Y. Sept. 27, 2005); Weight Watchers Int'l, Inc. v. Stouffer Corp., 744 F. Supp. 1259, 1272 (S.D.N.Y. 1990); Am. Home Prods. Corp. v. Johnson & Johnson, 654 F. Supp. 568,

590 (S.D.N.Y. 1987); <u>S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.</u>, 614 F. Supp. 1278, 1319

(S.D.N.Y. 1985) *aff'd in part and vacated in part on other grounds*, 781 F.2d 198 (2d Cir. 1986).

## 8.   <u>Deceives or Has a Tendency to Deceive</u>

The second element that Fresh Del Monte must prove to establish its false advertising claim is deception. Fresh Del Monte must show that the challenged advertising actually deceived or had the tendency to deceive a "substantial portion" or "statistically significant" percentage of the target audience.

There are two situations where consumer deception can be <u>presumed</u>. The first is where an advertisement is <u>literally false</u>, i.e., shown to be false under one of the two standards I referred to earlier. The second is where a party establishes that the advertiser intentionally set out to deceive the public, and the advertiser's deliberate conduct in this regard was of an egregious nature. In either of these two situations, <u>the burden shifts to the advertiser</u> to prove, by a preponderance of the evidence, that a substantial segment of the target audience was not actually deceived by its advertisements. If the advertiser cannot satisfy this burden, you should find that the element of deception has been established.

If, on the other hand, you find that the advertising claim is not literally false, but rather misleading, and that the advertiser did not intentionally set out to deceive the public, no presumption of deception applies. In that case, the burden is on Fresh Del Monte to demonstrate with evidence that a substantial portion or statistically significant percentage of the target audience has been deceived, or was <u>likely</u> to have been deceived, by the advertisement in question. On this issue, you may consider consumer survey evidence, evidence of how viewers reacted to the challenged advertising and, of course, your own reactions to and of analysis of the advertising.

In the context of the results of a consumer survey, there is no minimum portion or percentage of deceived consumers that establishes conclusively that an advertisement has

deceived a "substantial portion" of consumers.  Generally speaking, however, a showing in a

reliable, competent survey that 15% to 20% or more of the target consumer population will be

misled is persuasive evidence that the challenged conduct has the tendency to deceive a

substantial portion or statistically significant percentage of the target audience.  Of course, your

determination of the significance of the results of a survey depend on how much weight you

believe that survey is entitled to based on your analysis of its methodology.


**Authority:** *Literally False Claims:* Time Warner Cable, Inc. v. DIRECTV, Inc.,

497 F.3d 144, 153 (2d Cir. 2007) (quoting Coca-Cola Co. v. Tropicana Prods., Inc., 690 F.2d 312,

317 (2d Cir. 1982)); Resource Developers, Inc. v. The Statue of Liberty Ellis Island Found., Inc.,

926 F.2d 134, 140 (2d Cir. 1991); Braun Inc. v. Optiva Corp., No. 98 Civ. 4070, 2000 U.S. Dist.

LEXIS 12592, at *4 (S.D.N.Y. Aug. 31, 2000); 4 J. Thomas McCarthy, McCarthy on

Trademarks and Unfair Competition § 27:58 (4th ed. 2010).

**Authority:** *Misleading Claims:* Johnson & Johnson * Merck Consumer Pharms.

Co. v. Smithkline Beecham Corp., 960 F.2d 294, 297-99 (2d Cir. 1992); Tiffany (NJ) Inc. v.

eBay, Inc., No. 04 Civ. 4607, 2010 U.S. Dist. LEXIS 96596, at *5 (S.D.N.Y. Sept. 13, 2010);

McNeil-PPC, Inc. v. Pfizer Inc., 351 F. Supp. 2d 226, 249 (S.D.N.Y. 2005); Multivideo Labs,

Inc. v. Intel Corp., No. 99 Civ. 3908, 2000 U.S. Dist. LEXIS 110, at *46-47 (S.D.N.Y. Jan. 7,

2000); see also Fed R. Evid. 803(3); 4 J. Thomas McCarthy, McCarthy on Trademarks and

Unfair Competition § 23:15 (4th ed. 2010).

**Authority:** *"Substantial Portion" of Consumers:* Johnson & Johnson-Merck

Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc., 19 F.3d 125, 134 n.14 (3d Cir.

1994) (citing cases finding "deception rates" of 20% or more to be sufficient); Proctor & Gamble v. Ultreo, Inc., 574 F. Supp. 2d 339, 345 (S.D.N.Y. 2008) ("Cases have held that 20% constitutes a substantial percentage of consumers."); McNeil-PPC, Inc. v. Pfizer Inc., 351 F. Supp. 2d 226, 249 (S.D.N.Y. 2005) (same); see, e.g., Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 594 (3d Cir. 2002) (showing that 15% of the respondents were misled deemed sufficient for deception); Telebrands Corp. v. Media Group, Inc., 45 U.S.P.Q.2d 1342, 1997 WL 790576, at *5 (S.D.N.Y. Dec. 24, 1997) (20%). McNeilab, Inc. v. American Home Products Corp., 675 F. Supp. 819, 823 (S.D.N.Y. 1987), aff'd, 848 F.2d 34, 6 U.S.P.Q.2d 2007 (2d Cir. 1988) (21% to 34%); see, e.g., 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §§ 27:57, 32:193 (4th ed. 2010).

## 9.    <u>Materiality</u>

The third element that Fresh Del Monte must prove to establish a Lanham Act violation is that the false or misleading advertising statements are material.  Advertising statements are material if they involve an inherent quality of the product or service being advertised, or are likely to have some effect on the purchasing decisions of consumers.  In other words, Fresh Del Monte must show that the advertising claim it alleges to be false or misleading did not just deal with a trivial or minor issue concerning the cut fruit products.

I will give you examples to illustrate this point.  Suppose a manufacturer advertises its juice product as containing "100% pomegranate juice."  That claim involves an inherent quality of the juice product being advertised, and likely will have some effect on consumer purchasing decisions.

**Authority:** 4 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 27:35, at 27-73 (4th ed. 2010); <u>Time Warner Cable, Inc. v. DIRECTV, Inc.</u>, 497 F.3d 144, 153 n.3 (2d Cir. 2007); <u>Telebrands Corp. v. Wilton Indus., Inc.</u>, 983 F. Supp. 471, 475 (S.D.N.Y. 1997); <u>see also</u> <u>POM Wonderful LLC v. Purely Juice, Inc.</u>, No. 07 Civ. 0263 2008 WL 4222045, at *11 (C.D. Cal. July 17, 2008) (source of the "100% pomegranate juice" hypothetical).

## 10.   Likelihood of Injury

The fourth element that Fresh Del Monte must show to establish a Lanham Act violation is a likelihood of injury – in other words, a likelihood that the Del Monte Foods' advertising will cause Fresh Del Monte to incur a loss of sales or profits, or damage to its reputation.  A mere subjective belief by Fresh Del Monte that it is likely to be injured is insufficient to satisfy this element.  Rather, Fresh Del Monte must demonstrate, in some manner, a causal link between the allegedly false or misleading statements and the likelihood of some harm.  To satisfy this element, the Fresh Del Monte need not prove that its injury is a certainty, nor need it quantify the amount of the damage to its business interests.

**Authority:** Ortho Pharm. Corp. v. Cosprophar, Inc., 32 F.3d 690, 694 (2d Cir. 1994); PPX Enters., Inc. v. Autofidelity Enters., Inc., 818 F.2d 266, 271 (2d Cir. 1987), *abrogated on other grounds*, Hannex Corp. v. GMI, Inc., 140 F.3d 194, 206 (2d Cir. 1998); Johnson & Johnson v. Carter-Wallace, Inc., 631 F.2d 186, 189 (2d Cir. 1980).

## 11.    Unfair Competition

Fresh Del Monte also contends that Del Monte Foods' conduct in developing, packaging, labeling, advertising, and selling its cut fruit products constitutes unfair competition under New York law.  The essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, which is likely to cause confusion or to deceive purchasers as to the origin of the goods.

You should analyze the unfair competition claim using the same standards and requirements as the false advertising claim under the Lanham Act, which I detailed earlier. However, to find in favor of Fresh Del Monte on unfair competition, there is one additional requirement – you must find that Del Monte Foods acted in bad faith in advertising its cut fruit products.

Authority: Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 34-35 (2d Cir. 1995); Bruce Lee Enters., LLC v. A.V.E.L.A., Inc., No. 10 Civ. 2333, 2011 U.S. Dist. LEXIS 36406, at *18 (S.D.N.Y. Mar. 31, 2011); Twentieth Century Fox Film Corp. v. Marvel Enters., Inc., 155 F. Supp. 2d 1, 25 (S.D.N.Y. 2001).

**12.** **Damages For False Advertising And Unfair Competition**

Now that I have instructed you on how to determine whether Fresh Del Monte has demonstrated that Del Monte Foods' advertising violated the Lanham Act or the New York common law of unfair competition, I will instruct you on how to determine whether monetary damages should be awarded on these claims. You should only reach this issue if you find that Del Monte Foods has violated the Lanham Act or engaged in unfair competition.

A challenger seeking to receive monetary damages must first demonstrate a causal link between the advertiser's deceptive statements and monetary harm or injury. Where companies are direct competitors and there is evidence of the advertiser's intent to deceive, circumstantial evidence is sufficient to prove the causal link.

Second, once a causal connection has been established, the challenger must also provide a "reasonable estimate" of the amount of its damages. Parties injured by false and/or misleading advertising are not required to prove the amount of monetary damages with exacting specificity or to a certain number. Rather, you may engage in some degree of speculation in computing the amount of damages. However, there must be some basis upon which you may make a just and reasonable estimate of the damages caused by the false or misleading advertising and, while some degree of speculation is permissible, the award cannot be based merely on speculation.

There are two types of damages that Fresh Del Monte can recover for false advertising.

First, Fresh Del Monte can recover the profits that it lost as a result of the false or misleading advertising. In order to prove that it lost profits, Fresh Del Monte must show that it lost revenues and that the loss was caused by the false or misleading advertising at issue. This

can include amounts that Fresh Del Monte can prove it would have received as a reasonable royalty.

Second, Fresh Del Monte may be awarded the profits that <u>Del Monte Foods</u> gained as a result of its own false statements. This is called an "accounting" of profits. In order to justify an accounting of profits, Fresh Del Monte must prove that Del Monte Foods willfully engaged in the false or misleading advertising. False or misleading advertising is willful if the advertiser acted deliberately or in bad faith – in other words, the advertiser had knowledge that the advertising message was false or misleading, but disseminated it anyway. False or misleading advertising is also willful if the advertiser was on notice that its advertising was <u>likely</u> false or misleading and <u>recklessly disregarded that possibility</u> – in other words, the advertiser did not conduct any further analysis to evaluate the truthfulness or substantiation of the advertising claim.

If you decide to award Fresh Del Monte an accounting of the Del Monte Foods' profits, Fresh Del Monte is only required to provide evidence of Del Monte Foods' revenues related to the products at issue. The burden then shifts to Del Monte Foods to prove by a preponderance of the evidence that any part of those revenues are not attributable to the false or misleading advertising. In other words, Del Monte Foods has a right to deduct from an accounting award general expenses – such as overhead and operating costs – that it incurred in marketing and providing its services, <u>but only if Del Monte Foods can establish that those general expenses are reasonably related to the revenues derived from the false and misleading advertising</u>. If Del Monte Foods fails to demonstrate that connection between its general expenses and wrongly derived revenues, you have no obligation to deduct costs or revenues

22

attributable to any other factors from your calculation and award of the Del Monte Foods' profits to Fresh Del Monte.

**Authority:** *Damages Generally/Lost Profits*: 15 U.S.C. § 1117(a); <u>Dairy Queen, Inc. v. Wood</u>, 369 U.S. 469, 477-80 (1962); <u>PPX Enters. v. Autofidelity Enters.</u>, 818 F.2d 266, 271 (2d Cir. 1987), *abrogated on other grounds*, <u>Hannex Corp. v. GMI, Inc.</u>, 140 F.3d 194, 206 (2d Cir. 1998); <u>Burndy Corp. v. Teledyne Indus., Inc.</u>, 748 F.2d 767, 771 (2d Cir. 1984); <u>Playtex Prods., Inc. v. Procter & Gamble Co.</u>, No. 02 Civ. 8046, 2004 WL 1658377, at *6 n.3 (S.D.N.Y. Jul. 26, 2004); <u>Gillette Co. v. Wilkinson Sword, Inc.</u>, No. 89 CV 3586, 1992 WL 30938, at *3 (S.D.N.Y. Feb. 3, 1992).

**Authority:** *Accounting of Profits/Willfulness*: <u>George Basch Co. v. Blue Coral, Inc.</u>, 968 F.2d 1532, 1539-40 (2d Cir. 1992); <u>W.E. Bassett Co. v. Revlon, Inc.</u>, 435 F.2d 656, 665 (2d Cir. 1970); <u>Rexall Sundown, Inc. v. Perrigo Co.</u>, 707 F. Supp. 2d 357, 359 (E.D.N.Y. 2010); <u>Louis Vuitton Malletier v. Dooney & Bourke, Inc.</u>, 525 F. Supp. 2d 558, 570-71 (S.D.N.Y. 2007). <u>Cf.</u> <u>Island Software & Computer Serv., Inc. v. Microsoft Corp.</u>, 413 F.3d 257, 263-64 (2d Cir. 2005); <u>Coach, Inc. v. Melendez</u>, No. 10 Civ. 6178, 2011 U.S. Dist. LEXIS 116842, at *16-*20 (S.D.N.Y. Sept. 2, 2011); <u>Nike, Inc. v. Top Brand Co. Ltd.</u>, No. 00 Civ. 8179, 2005 WL 1654859, at *6 (S.D.N.Y. July 13, 2005); <u>New Line Cinema Corp. v. Russ Berrie & Co.</u>, 161 F. Supp. 2d 293, 303-04 (S.D.N.Y. 2001).

13.     **Enhanced Damages**

Where an injury from a false or misleading advertising claim is difficult to calculate because it does not directly translate to discernible lost revenues, and therefore lost profits, you may, at your discretion, increase your damages award to any amount not exceeding three times the amount of actual damages you find. Such enhanced damages are awarded to ensure that a challenger receives adequate compensation for its injuries, and cannot be awarded to punish or penalize the advertiser.

**Authority:** 15 U.S.C. § 1117(a); Braun Inc. v. Optiva Corp., No. 98 Civ. 4070, 2000 U.S. Dist. LEXIS 12592, at *7-*8 (S.D.N.Y. Aug. 25, 2000); Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc., 880 F. Supp. 1005, 1025-26 (S.D.N.Y. 1994).

**Additional Note:** Fresh Del Monte recognizes that the Second Circuit has expressed that "[w]here . . . the recovery is based on the plaintiff's damages, the court – not the jury – may enhance the award up to three times the amount of actual damages." Getty Petroleum Corp. v. Bartco Petroleum Corp., 858 F.2d 103, 109 (2d Cir. 1988). In so finding, the Second Circuit relied on the actual language used in 15 U.S.C. § 1117(a) – namely that "the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." Id. That opinion, however, was issued prior to the Supreme Court's decision in Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340 (1998), which held that plaintiffs seeking relief under the Copyright Act were constitutionally entitled to a trial by jury on the issue, and determination, of statutory damages. As the Supreme Court determined that the Copyright Act's reference to the ability of the "court

[in] its discretion" to increase a statutory damages award did not preclude the issue from going to the jury, Fresh Del Monte notes that the Second Circuit's holding in <u>Getty</u> based on its textual analysis of the Lanham Act may no longer be considered to be controlling.  <u>See</u> <u>id.</u> at 353.

## 14.    Elements of a Breach of Contract Claim

Fresh Del Monte has also made a claim for breach of contract.  It is undisputed that the contract relevant to dispute – which I will call the "Agreement" – is governed by New York law.  Under New York law, to recover for breach of contract, a party must prove by a preponderance of the evidence the following four elements:

1.    The making of a contract between the parties;

2.    Performance of the contract by a party;

3.    A failure to perform, or "breach," by the other party; and

4.    Resulting damage to the performing party.

In this case, the first and second elements are not disputed, so you only need to determine whether Del Monte Foods breached the Agreement and whether – and if so, to what extent – Fresh Del Monte suffered damages.

**Authority**: NY PJI 4:1; Machine-Outils Henri Line, Ltee v. Morey Mach., Inc., 94 Civ. 8880, 1996 U.S. Dist. LEXIS 6533, at *16 (SDNY May 13, 1996 ) (Stein, J.); PSG Poker, LLC v. DeRosa-Grund, No. 06 Civ. 1104, 2008 WL 190055, at *7 (S.D.N.Y. Jan. 22, 2008).

## 15.  <u>Interpretation of Contracts</u>

In order to determine whether Del Monte Foods has breached the Agreement, you need to interpret its relevant provisions.  Specifically, you must interpret Exhibit B of the Agreement to determine whether Fresh Del Monte in fact has the exclusive right to sell refrigerated pineapple, papaya, berry, banana, and/or melon products under the "Del Monte" name and trademarks, regardless of whether those products are processed.

When interpreting the Agreement, your primary goal is to give effect to the parties' <u>intentions</u> at the time of the contract's formation.  The best evidence of the parties' intent is the actual language expressed in the contract itself.  In determining the meaning of relevant language in the contract, there are a few general principles that you should endeavor to follow to the extent feasible:

1.      Words are to be given their fair and reasonable meaning;

2.      All parts of a contract are to be read together in harmony;

3.      Terms are to be construed by reference to the rest of the document and the terms associated with it or in close proximity to it;

4.      Terms are not to be construed so as to render them superfluous or without effect;

5.      When certain language is omitted from a provision in a contract but placed in other provisions, it must be assumed that this omission was intentional; and

6.      Where there is an inconsistency between a general provision and a specific provision, the specific provision controls.

In determining the intent of the parties, you may also consider extrinsic evidence -- that is, evidence outside of the contract language itself – such as the surrounding events and

circumstances during formation of the contract.  This may include drafts of the Agreement, the state of the relevant businesses at the time of the Agreement, and the course of dealing and communications between the parties in negotiating and drafting the Agreement.  However, a person's secret intent that was not communicated to the other side at the time of forming the contract has no bearing; only the intent indicated by their words and acts may be considered.

You may also consider as evidence of the parties' intent and interpretation of the contract their course of conduct throughout the life of the contract – that is, their actions after the contract was formed.

**Authority:** PJI § 4:1.1; GSI Commerce Solutions, Inc. v. Babycenters, LLC, 618 F.3d 204, 214 (2d Cir. 2010) (recognizing general principles 4 and 6); N.Y. State Law Officers Union v. Andreucci, 433 F.3d 320, 332 (2d Cir. 2006); McCavitt v. Swiss Reinsurance Am. Corp., 237 F.3d 166, 168 n.2 (2d Cir. 2001) (recognizing general principle 3); Kinek v. Paramount Comm'cns, Inc., 22 F.3d 503, 509 (2d Cir. 1994); Facetime Commc'ns, Inc. v. Reuters Ltd., No. 08 Civ. 4730, 2008 WL 2853389, at *5 (S.D.N.Y. July 22, 2008); Faulkner v. Nat'l Geographic Soc'y, 452 F. Supp. 2d 369, 377-78 (S.D.N.Y. 2006); First Montauk Sec. Corp. v. Menter, 26 F. Supp. 2d 688. 689 (S.D.N.Y. 1998);  Innophos, Inc. v. Rhodia, S.A., 10 N.Y.3d 25, 29 (2008) Bombay Realty Corp. v. Magna Carta, Inc., 100 N.Y.2d 124, 127 (N.Y. 2003) (recognizing general principle 2) Sutton v. E. Riv. Sav. Bank, 55 N.Y.2d 550, 555 (1982) (recognizing general principle 1); Sterling Inv. Servs., Inc. v. 1155 Nobo Assoc., LLC, 30 A.D.3d 579, 581 (2d Dep't 2006) (recognizing general principle 5).

## 16.   Damages For Breach of Contract

If you find a breach of the Agreement, you must then consider what, if any, amount of damages to award.  You should only reach the issue of damages on Fresh Del Monte's breach of contract claim if you find that Del Monte Foods did, in fact, breach the Agreement.

A party seeking to receive monetary damages on a breach of contract claim must prove that any injury it suffered was a natural and probable consequence of the breach.  Damages for breach of contract must be adequate to compensate the aggrieved party for the breach.  In other words, your damages award should put the plaintiff in the approximately the same financial position that it would have been in had the breach not occurred.   Such damages are not meant to punish the party that breached.

One type of damages that can be recovered on a breach of contract claim are the aggrieved party's lost profits – that is, the profits that it would have received had the contract not been breached.  Lost profits may be recovered where the amount can be proven with "reasonable certainty," although they do not need to be proven with "mathematical precision."

Here, Fresh Del Monte asserts that the proper measure of lost profits is derived from the royalties that Del Monte Foods would have had to pay Fresh Del Monte in order to be permitted to market and sell the refrigerated fruit products allegedly breaching the Agreement under the "Del Monte" name and trademarks.


**Authority**: PJI 4:20; Dupont Flooring Sys. v. Discovery Zone, Inc., No. 98 Civ. 5101, 2004 U.S. Dist. LEXIS 13149, at *15-16 (S.D.N.Y. Jan. 4, 2005) (Stein, J.); Upper Deck Co., LLC v. BreaKey Int'l, BV, 390 F. Supp. 2d 355, 358-59 (S.D.N.Y. 2005); Forum Ins. Co. v. Zeitman, No. 91 Civ. 7980, 1995 WL 546949, at *2 (S.D.N.Y. Sept. 13, 1995); Brushton-Moira

Cent. Sch. Dist. v. Thomas Assocs., 91 N.Y.2d 256, 261 (1998); Ashland Mgmt., Inc. v. Janien,

82 N.Y.2d 395, 403 (1993); Am. List Corp. v. U.S. News & World Report, Inc., 75 N.Y.2d 38,

42-44 (1989); Schwartz v. Pierce, 57 A.D.3d 1348, 1351-52 (3d Dep't 2008).

**17.**     **Verdict Form**

According to the principles of law as charged by the Court and the facts as you find them, please answer the following questions:

1.     Did Del Monte Foods' marketing, packaging, and/or labeling of its cut fruit products constitute false or misleading advertising in violation of the Lanham Act?

Yes _____ No _____

2.     If you answered "yes" to Question 1, specify a dollar amount, if any, to be awarded to Fresh Del Monte as compensation for Del Monte Foods' Lanham Act violations.

$ _____

3.     Did Del Monte Foods willfully engage in false or misleading advertising?

Yes _____ No _____

4.     If you specified a dollar amount in Question 2, specify the amount, if any, said amount should be enhanced (cannot exceed three times the amount or amounts set forth in response to Question 2)

$_____

5.     Did Del Monte Foods' conduct constitute unfair competition under New York common law?

Yes _____ No _____

6.     If you answered "yes" to Question 5, specify a dollar amount, if any, to be awarded to Fresh Del Monte as compensation for Del Monte Foods' unfair competition.

$ _____

31

7.     Did Del Monte Foods breach the parties' Agreement by selling refrigerated products containing pineapple, melon, berry, papaya, or banana?

Yes _____ No _____

8.     If you answered "yes" to Question 7, specify a dollar amount, if any, to be awarded to Fresh Del Monte as compensation for Del Monte Foods' breach.

$ _____

Dated: January 9, 2012
      New York, New York

Respectfully submitted,

Kenneth A. Plevan
kenneth.plevan@skadden.com
Anthony J. Dreyer
anthony.dreyer@skadden.com
Lauren Aguiar
lauren.aguiar@skadden.com
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Fax: (212) 735-2000

*Attorneys for Plaintiff*
*Fresh Del Monte Produce Inc.*

33