UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                    :

FRESH DEL MONTE PRODUCE INC.,       :
                                    :

          Plaintiff and            :
          Counterclaim Defendant,   :       08 Civ. 8718 (SHS)
                                    :

      -against-                :       <u>OPINION & ORDER</u>
                                    :

DEL MONTE FOODS COMPANY, and DEL  :
MONTE CORPORATION,             :
                                    :

          Defendants and          :
          Counterclaim Plaintiffs.    :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      Plaintiff Fresh Del Monte Produce, Inc. ("Fresh") has moved for a permanent injunction

following a jury verdict, largely in its favor, on its breach of contract and Lanham Act claims

against defendants Del Monte Corp. ("DMC") and Del Monte Foods Co.[1] The jury found that

DMC had breached a trademark license agreement with Fresh by selling Del Monte-branded

refrigerated fruit products containing five specified types of fruit; the jury also found that DMC

had willfully violated the Lanham Act by falsely advertising that most of the accused product

lines were fresh when they were actually preserved. Fresh also contends that this is an

"exceptional case" within the meaning of the Lanham Act's remedial provision, 15 U.S.C.

§ 1117(a), and therefore the Court should award it attorneys' fees and prejudgment interest on its

Lanham Act claims. Finally, pursuant to New York law, *see* N.Y. C.P.L.R. §§ 5001, 5002, Fresh

seeks prejudgment interest on its breach of contract claim.

---

[1] Throughout the litigation, the parties have treated defendants as a single entity; the Court will do so as well.

For the reasons set forth below, the Court finds that the circumstances warrant an injunction, albeit a substantially narrower one than Fresh seeks. Even assuming that Fresh has demonstrated that this is an exceptional case, the Court exercises its discretion to decline to award Fresh attorneys' fees or prejudgment interest on its successful Lanham Act claims. Finally, Fresh is entitled to 9% prejudgment interest on its breach of contract claim up through the date of the verdict, and the Court will instruct the Clerk of Court to add 9% interest from the date of the verdict through the date of the judgment.

## I.      BACKGROUND

This is the second trial between the two companies entitled to use the Del Monte brand and trademark (together, the "Mark"). DMC is the successor to the original Del Monte, which in 1989 spun off its fresh fruit division. That division became Fresh, which focuses on selling fresh fruit products, and DMC has since focused on distributing preserved, rather than fresh, produce. In splitting up the business, Del Monte also divided the rights to use the Mark in a license agreement between DMC and Fresh's predecessor (the "License Agreement"). DMC sold Fresh the rights—often to the exclusion of DMC's own rights—to use the Mark on certain products primarily comprising fresh fruit and vegetables, while DMC largely retained the exclusive right to use the Mark on preserved produce.

Two federal court trials and twenty-four years later, however, the parties still disagree about the meaning of the License Agreement. The first trial, a bench trial before U.S. District Judge Jed S. Rakoff, established that DMC had licensed the Mark to Fresh for exclusive use in selling fresh fruit, even if that fresh fruit had been processed in certain ways. *See* Transcript of Oral Ruling at 15, *Del Monte Corp. v. Del Monte Fresh Produce, Inc.*, No. 98 Civ. 4060 (JSR) (S.D.N.Y. Mar. 18, 1999).

A decade after that bench trial, the parties were once again in court, again disputing the meaning of the License Agreement's terms. Fresh claimed DMC had breached the License Agreement by using the Mark on products for which Fresh held the exclusive rights to do so. Fresh alleged that a refrigerated fruit provision in the License Agreement carved out an exception to the fresh-versus-preserved division of the Mark. That provision specifies that the products covered by Fresh's license include "on an exclusive basis, refrigerated pineapple products (including but not limited to peeled, cored, cut or diced pineapple) and refrigerated Non-Utilized Fruit." (Trial Ex. 1 at 45, Ex. B to Decl. of LaShann M. DeArcy dated May 18, 2012 ("DeArcy Decl."), Dkt. No. 162.) The Agreement defined Non-Utilized Fruit as "melons, berries, papayas and bananas." (*Id.* at 46.) Together, the fruits subject to the refrigerated fruit clause—pineapple and Non-Utilized fruits—are termed the "Five Fruits." Fresh, relying largely on the language of the License Agreement at trial, contended that this refrigerated fruit provision granted it the exclusive right to use the Mark on refrigerated products containing the Five Fruits—even if they are preserved. The jury found that DMC had breached the License Agreement, and awarded damages of $5.95 million on the breach. The parties agree that the jury used a reasonable royalty rate of 1.75% to calculate the damages. (*See* Pl.'s Mem. in Supp. of Post-Trial Mot. for Permanent Inj. at 22, Dkt. No. 148; Defs.' Opp. to Pl.'s Post-Trial Mot. for Permanent Inj. at 5, Dkt. No. 167.)[2]

Fresh also alleged that DMC's marketing practices for its Fruit Bowl, Fruit Naturals, Superfruit, SunFresh, and Orchard Select product lines falsely communicated the message that those products contained fresh, rather than preserved, fruit in violation of the Lanham Act. *See*

---

[2] Because many of these DMC products were already on the shelves or on their way there, the parties agreed that DMC could sell its then current inventory and pay Fresh a 1.75% royalty for those sales, and dispose of any inventory remaining at the end of calendar year 2012. (*See* Defs,' Opp. at 5; Pl.'s Reply Mem. at 8 n.9, Dkt. No. 171.)

15 U.S.C. § 1125(a). Most prominent among DMC's allegedly wrongful marketing practices are labels communicating the false message that refrigeration of the product was required and failing to communicate that the product contains preservatives or is pasteurized, in combination with placing the products next to similar fresh fruit products on refrigerated shelves in the fresh produce section of supermarkets. The jury found that DMC willfully violated the Lanham Act with regard to all but the Orchard Select product line; as to the Orchard Select product line, it found no violation of the Lanham Act by DMC. Although the jury found Fresh had failed to prove any lost sales due to the violations, it awarded Fresh $7.2 million in DMC's profits on the four product lines on which it had found willful Lanham Act violations. Fresh also alleged, and the jury agreed, that DMC's use of a print advertising campaign—the "Fruit Undressed" campaign, which showed fresh fruit in the process of being peeled or cut—had violated the Lanham Act, though Fresh sought no damages on that claim. (*See* Verdict Form, Ex. A to DeArcy Decl.)

## II.     FRESH IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF

### A.     The U.S. Supreme Court's Test for Permanent Injunctive Relief Set Forth in the *eBay* Case Applies to Lanham Act and Trademark License Agreement Disputes.

Section 34 of the Lanham Act specifically authorizes district courts to enter injunctive relief in false advertising cases. 15 U.S.C. § 1116(a). Indeed, "[i]n most cases, after a full trial finding false advertising, a final injunction is appropriate." 5 McCarthy on Trademarks § 27:37 (4th ed. 2012) ("McCarthy"). Such an injunction is "the usual and standard remedy once trademark infringement has been found." *Id.* § 30:1. Similarly, courts have recognized that the breach of a trademark license agreement usually requires an injunction to prevent wrongful trademark use—more often by the licensee, but also by the owner-licensor. *Compare Gayle Martz, Inc. v. Sherpa Pet Grp., LLC*, 651 F. Supp. 2d 72, 84 (S.D.N.Y. 2009) (enjoining licensee

from infringing trademark by exceeding scope of license), *with Shoney's, Inc. v. Schoenbaum*, 686 F. Supp. 554, 567-68 (E.D. Va. 1988) (enjoining trademark owner and licensor from breaching licensee's exclusive rights to trademark), *aff'd*, 894 F.2d 92 (4th Cir. 1990).

Nonetheless, a permanent injunction will only issue if a plaintiff has met the U.S. Supreme Court's four-factor test spelled out in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), which was a patent dispute:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 391; *accord Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010). Although the U.S. Court of Appeals for the Second Circuit has endorsed slight variations from that test, the panel in *Salinger* observed that "*eBay* strongly indicates that the traditional principles of equity [as embodied in the four-factor test] it employed are the presumptive standard for injunctions in any context." *Id.* at 78. To apply a different test or presumption of entitlement to an injunction would be "a major departure from the long tradition of equity practice [that] should not be lightly implied." *eBay*, 547 U.S. at 391 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982)). As in the patent statute at issue in *eBay*, section 1116(a)'s grant of authority to issue injunctive relief contains no indication that any other standard should be employed and, to the contrary, expressly incorporates "the principles of equity." 15 U.S.C. § 1116(a); *cf. eBay*, 547 U.S. at 392 (quoting 35 U.S.C. § 283 ("in accordance with the principles of equity")). Accordingly, the Court finds that the test articulated in *eBay* applies here for an injunction against false advertising and breach of the License Agreement.

B.      Application

DMC contends that an injunction is not warranted against it largely for two reasons: (1) its voluntary cessation of its violative conduct moots the need for an injunction, and (2) the injury to Fresh is not irreparable and has been more than adequately remedied by the award to Fresh of DMC's profits.

The Court first finds that injunctive relief is not moot. Because an assessment of the *eBay* factors turns in part on the specific provisions of the injunction, the Court next addresses the proper scope of an injunction against future violations, finding that the injunction Fresh seeks is "broader than necessary to cure the effect of the harm caused by the violation[s]." *See Forschner Grp. v. Arrow Trading Co.*, 124 F.3d 402, 406 (2d Cir. 1997). Finally, the Court determines that Fresh has, pursuant to *eBay*, demonstrated that an injunction of proper scope is warranted.

1.      *DMC's post-trial cessation of its violations have not mooted injunctive relief.*

The material facts regarding DMC's cessation of its violative conduct are not in dispute. Until the jury delivered its verdict, DMC behaved in a manner consistent with its position in this litigation: selling Del Monte-branded refrigerated products with the Five Fruits and using the marketing practices that the jury found to willfully violate the Lanham Act. After the verdict, DMC has taken steps to discontinue the production of breaching products using the Mark. (Decl. of Shaily Sanghvi dated May 18, 2012 ("Sanghvi Decl.") ¶¶ 2-4, Dkt. No. 170.) DMC has also agreed to cease labeling heat-treated products with the statement "Must be Refrigerated" (Sanghvi Decl. ¶ 6) and to note on the labels' ingredient lists when a product is "pasteurized" or contains "preservatives" (Sanghvi Decl. ¶¶ 7, 9).

"It is settled that an action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the

defendants would be free to return to (their) old ways." *Allee v. Medrano*, 416 U.S. 802, 810-11 (1974) (quotation marks omitted). "Courts in this circuit have long held that a permanent injunction should issue in trademark cases where a defendant asserts that its pre-lawsuit use was lawful, and that pre-lawsuit behavior may serve as a basis for a permanent injunction, as it may indicate that defendant's intentions are in doubt." *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 256 (S.D.N.Y. 2012) (citations omitted).

Prior cases establish no bright line for when cessation of infringing activity moots the request for an injunction. *Compare Consumers Union of U.S., Inc. v. Gen. Signal Corp.*, 724 F.2d 1044, 1048, 1052 n.11 (2d Cir. 1983) (finding injunctive relief moot based on voluntary cessation immediately after filing of complaint but before court hearing) *with Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 405 (2d Cir. 2004) (affirming grant of preliminary injunction even though defendant "had agreed, *prior to the initiation of the suit*, to cease using" plaintiff's mark (emphasis added)). The question is whether the record as a whole evinces "some cognizable danger of recurrent violation." *Robert Stigwood Grp. Ltd. v. Hurwitz*, 462 F.2d 910, 913 (2d Cir. 1972) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953)).

The record here does evince "some cognizable danger of recurrent violation." *Id.* For years, despite notice of the claims and continuing through trial, DMC has used the Mark in a manner the jury determined is reserved to Fresh alone, and has used marketing practices that the jury found misled consumers about its products. DMC was within its rights to contest the allegations at trial, but it cannot be heard to complain when Fresh seeks to reduce the jury's verdict to an enforceable injunction. The evidence showed DMC's own senior staff discussing "what we can get away with vs. Del Monte Fresh Produce" in selling refrigerated products. (Trial Ex. 41, Ex. 6 to Decl. of Anthony J. Dreyer dated Apr. 27, 2012 ("Dreyer Decl."), Dkt.

No. 149.) The jury also saw evidence that DMC knew that consumers might misperceive its refrigerated products as fresh produce, including market research indicating that "it is highly likely that there is consumer confusion between Del Monte Fruit Naturals" and plaintiff's fresh cut fruit. (Trial Ex. 55 at 66, Ex. 7 to Dreyer Decl.) DMC staff also discussed another study that indicated that 72% of consumers thought that its preserved grapefruit "looked like fresh fruit." (Trial Ex. 68, Ex. 9 to Dreyer Decl.) DMC executives admitted that pasteurized products were labeled "Must be Refrigerated" despite their conceded knowledge that such products are "shelf stable" and therefore do not have to be refrigerated. (Trial Tr. 566:12-568:18; *see also id.* 506:24-508:8). Considering DMC's conduct before and during the pendency of the litigation, the Court finds that there is "more than the mere possibility" that the infringing conduct will recur. *See Robert Stigwood*, 462 F.2d at 913 (citation omitted).

DMC points to no case finding injunctive relief moot despite a defendant's waiting until after a full trial on the merits to begin a months-long process of remediating their practices—let alone circumstances that led a jury to conclude that the Lanham Act violations were willful. Rather, DMC relies on cases that involve defendants who acted in good faith and ceased infringing activity as soon as they were notified of possible issues. In *Burndy Corp. v. Teledyne Industries, Inc.*, for example, the defendant "immediately" ceased representing that its products met an industry standard upon learning that they might be deficient, before suit was even threatened. *See* 748 F.2d 767, 769 (2d Cir. 1984). Similarly in *Boisson v. Banian Ltd.*, the defendant "immediately ceased" selling all allegedly infringing products, and even withheld those judged non-infringing from the market until the conclusion of the plaintiff's appeal. *See* 280 F. Supp. 2d 10, 19 (E.D.N.Y. 2003).

DMC has shown no such caution since Fresh informed DMC of the claims. Indeed, DMC continued its marketing and labeling practices throughout the pendency of the trial. In these circumstances, the Court concludes that DMC's probing of "what [it] can get away with" (Trial Ex. 41, Ex. 6 to Dreyer Decl.) presents a "cognizable danger of recurrent violation." *Robert Stigwood*, 462 F.2d at 913 (quoting *W. T. Grant Co.*, 345 U.S. at 633). The Court concludes that an injunction is not moot and turns now to what form an injunction should take and whether Fresh has met the *eBay* test.

> 2.   *A proper injunction is narrower than the one Fresh seeks.*

"Although a district court has 'a wide range of discretion in framing an injunction in terms it deems reasonable to prevent wrongful conduct,' it is nonetheless 'the essence of equity jurisdiction' that a court is only empowered 'to grant relief no broader than necessary to cure the effects of the harm caused by the violation.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) (quoting *Forschner Grp.*, 124 F.3d at 406); *see also* Fed. R. Civ. P. 65(b)(1).

Thus, the Second Circuit has "instructed that injunctive relief should be narrowly tailored to fit specific legal violations, and that the court must mould each decree to the necessities of the particular case." *Mickalis Pawn Shop*, 645 F.3d at 144. "An injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation." *Id.* at 145.

The Court addresses Fresh's requested injunction in two parts: (1) enjoining breaches of the License Agreement and (2) enjoining Lanham Act violations. For both, Fresh requests an injunction broader than what is necessary to prevent future violations.

a.      Scope of the injunction for breach of the License Agreement

The jury concluded that the refrigerated fruit provision of the License Agreement conferred on Fresh the exclusive right to use the Mark on refrigerated products that contain the Five Fruits. The injunction against future breaches of the License Agreement that the jury's verdict justifies is as follows: DMC will be enjoined from using the Mark on any product containing any of the Five Fruits that is intended to be refrigerated or chilled at the point of sale (the "breaching products"). In that regard, DMC will be enjoined from entering into sales or distribution agreements that permit refrigeration of Del Monte-branded products containing the Five Fruits at the point of sale. Further, the Court will order DMC to notify all known retailers of breaching products that those products are not to be sold under refrigeration. Finally, largely as Fresh has requested, the Court will order that, until March 31, 2015, if DMC learns that its customer is refrigerating DMC's Del Monte-branded Five Fruit products at the point of sale, DMC shall notify that customer in writing that it is not permitted to sell such products under refrigeration.

The additional provisions Fresh requests would result in an over-broad injunction. For example, although Fresh would like the injunction to regulate DMC's shipping and storage procedures, nothing in the License Agreement dictates how DMC may ship the breaching products or store them. In addition, there is no need for a mandatory injunction requiring DMC to list all of the breaching products it has sold over the past decade.

b.      Scope of the injunction for Lanham Act violations

The Court appropriately permitted Fresh to paint with a broad brush in depicting the claimed false advertising, thereby permitting the jury to find a violation of the Lanham Act based on the totality of DMC's marketing practices. Fresh, treating each feature as a stroke of that brush, insists that every stroke on the canvas must be enjoined. But the jury's verdict shows that

many of the practices Fresh offered to support the claim did not mislead consumers about the freshness of the products; the marketing of the Orchard Select product line, which the jury found did not violate the Lanham Act, shares many of those allegedly misleading features. In crafting an appropriately narrow injunction, the Court cannot fairly enjoin practices found not to violate the Lanham Act. Given the small differences between the offending products—especially the SunFresh product line—and the non-offending Orchard Select product line, Fresh's proposed injunction simply is not "narrowly tailored to fit specific legal violations." *See Mickalis Pawn Shop*, 645 F.3d at 144.

The appropriate injunction against future Lanham Act violations is as follows: DMC will be enjoined from pasteurizing or adding chemical preservatives to its fruit products without stating that fact on the label. DMC will be enjoined from stating that any preserved fruit product "Must be Refrigerated" without test results that establish that the product is not shelf stable and therefore must be refrigerated. The Court will order that DMC shall set forth on the ingredient list that sodium benzoate or potassium sorbate are preservatives, but DMC does not have to add that the product "Contains Preservatives" on its front. DMC will be enjoined from disseminating the "Fruit Undressed" advertisements, but DMC will not be required to state in any future ad campaigns that the products are preserved. Given the evidence that DMC had moved up the "best by" dates on fruit bowl products, thereby implying that the shelf life was shorter than it in fact was, DMC is enjoined from setting "best by," "sell by," or other similar dates on its products without test results that justify the existence of such a date. (*See* Trial Tr. at 512:24-515:9.)

> 3.    *Fresh has demonstrated that the Court should exercise its equitable discretion to issue a narrow injunction.*
>
>    a.    Irreparable injury and inadequate remedies at law

The first and second factors in the *eBay* test often blend together, and in each case, "the court must actually consider the injury the plaintiff [has] suffer[ed] . . . , paying particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'" *Salinger*, 607 F.3d at 80 (quoting *eBay*, 547 U.S. at 391). "Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer." *Salinger*, 607 F.3d at 81. DMC contends, in essence, that the jury's awarding Fresh $7.2 million in DMC's profits for the Lanham Act violations is a financial windfall that proves Fresh's injury is not irreparable and has been adequately remedied.

DMC's argument is, by its own terms, inapplicable to an injunction against breach of the License Agreement. The jury award of $5.95 million for breach of the contract was clearly derived from the parties' conflicting evidence about what constituted a reasonable royalty, and the parties agree that the jury used a rate of 1.75%. However, even accepting the royalty rate that resulted in the jury's award of $5.95 million in contract damages, those damages cannot fully compensate Fresh for harm to the good will of the Del Monte brand in refrigerated produce. There is no question, especially in light of DMC's acknowledgment in the License Agreement itself that any breach would result in irreparable harm (*see* Ex. 18 to Dreyer Decl. § 10.6), that such injuries are "difficult to measure" and that Fresh "should not be expected to suffer" them. *Salinger*, 607 F.3d at 81.

DMC's argument also misapprehends the very reason the Lanham Act authorizes an accounting of the defendant's profits: the difficulty of proving that a plaintiff has lost sales due to

a defendant's false advertising. The verdict here belies any suggestion that Fresh could easily prove the quantum of lost sales, let alone the harm flowing from loss of good will or market share. The jury found that Fresh was injured by the Lanham Act violations, but that Fresh had $0 in lost sales. (*See* Verdict Form at 1, Ex. A to DeArcy Decl.)  Instead, the jury awarded an accounting of DMC's profits. Because "the parties are competitors," an accounting of DMC's profits is "a rough measure of the plaintiff's damages." 5 McCarthy § 30:59; *see also* 15 U.S.C. § 1117 (an accounting "constitute[s] compensation and not a penalty"); Restatement (3d) Unfair Competition § 37, cmt. a (1995) (an accounting is "sometimes an approximate measure of the plaintiff's damages"). There is simply no way to know what the precise effects of these Lanham Act violations were, nor precisely what harm future violations would cause. And if Fresh cannot prove that a future violation is willful, it might find itself again having proven a violation but unable to demonstrate any lost sales. Thus, the Court concludes that Fresh's injuries are "irremediable, [and] irreparable, for many reasons," most prominently that the extent of the injuries is "difficult to measure." *Salinger*, 607 F.3d at 81.

b.      Balance of hardships

DMC complains only of hardship resulting from the over-broad features of Fresh's requested injunction that the Court has rejected. After all, DMC could hardly suffer hardship from complying with an injunction limited to enforcing the jury's verdict. Meanwhile, without sufficient assurance that DMC will abide by the jury's verdict, Fresh would be left to monitor DMC's actions at significant expense. Accordingly, the balance of hardships weighs in favor of issuing the injunction.

c.      Public interest not disserved

DMC also contends that the public would be disserved by an injunction. However, enforcing the License Agreement will help, not hurt, consumers. First, competition will not

suffer, because the parties agree that DMC can continue to sell refrigerated produce so long as it uses some other brand name. Second, enforcing the License Agreement will add clarity by ensuring that all Del Monte-branded refrigerated produce derives from one source. "The law of trademarks and unfair competition is shaped primarily by two competing public policies— namely, preventing consumer confusion on the one hand while promoting and rewarding healthy competition on the other." *Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402, 407 (2d Cir. 1997). The Court finds that a proper injunction advances those public policies and would not disserve the public interest. Accordingly, an injunction will issue.

## III.   ATTORNEYS' FEES FOR THE LANHAM ACT CLAIMS

The Lanham Act provides that "in exceptional cases [the Court] may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "Whether to award attorney fees, and the amount of any award, are matters that fall within the discretion of the district court." *Goodheart Clothing Co. v. Laura Goodman Enters.*, 962 F.2d 268, 272 (2d Cir. 1992). The parties dispute at length whether the Court should find that this case is "exceptional" within the meaning of section 1117(a)—and, further, whether the jury's willfulness finding *requires* the Court to find the case exceptional. But the Court need not resolve these disputes.

The award of attorneys' fees even in an exceptional case is discretionary. *See* 15 U.S.C. § 1117(a) (providing that courts "may," not shall, award fees in exceptional cases); *Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 846 (11th Cir. 1983) (even in "exceptional" cases, "the decision to award attorney fees is still within the court's discretion."); *see also S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986) (construing identically worded provision in the patent laws). The Court must "weigh considerations such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors

that may contribute to a fair allocation of the burdens of litigation as between winner and loser." *S.C. Johnson & Son*, 781 F.2d at 201.

Exercising its discretion, this Court will not award Fresh its attorneys' fees. In the view of the Court, this case was a close one in several respects, with a verdict that in part favored Fresh and in part favored DMC. The evidence showed a deliberate effort to attach to DMC's preserved refrigerated products an aura of freshness in consumers' minds, and to minimize the reminders that the products were preserved. But the evidence did not suggest that DMC used the "Must be Refrigerated" labels and omitted the fact that certain products were pasteurized or contained preservatives in order to trick consumers into believing the products were made by Fresh. Indeed, there was no evidence at all that the average consumer even knows that there are two different companies using the same Del Monte name and trademark. Nor, given the jury's split verdict, can Fresh complain that DMC's choice to litigate the case through trial was unreasonable. The record here does not reflect a level of bad faith that would justify the Court's exercise of its discretion to award Fresh its attorneys' fees.

## IV. PREJUDGMENT INTEREST

Fresh also seeks prejudgment interest on the damages the jury awarded it on both the Lanham Act violations and the breach of the License Agreement. The parties dispute both the availability and the calculation of Lanham Act prejudgment interest. In addition, although they agree that statutory prejudgment interest of 9% on the contract damages is proper, *see* N.Y. C.P.L.R. §§ 5001, 5004, they dispute the dates that should be used for the calculation. The Court addresses each issue in turn.

A.   The Court Declines to Award Prejudgment Interest on the Lanham Act
     Claims.

"Although Section 1117(a) does not provide for prejudgment interest, such an award is

within the discretion of the trial court and is normally reserved for 'exceptional' cases." *Am.*

*Honda Motor Co., Inc. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990) (citation

omitted); *compare* 15 U.S.C. § 1117(a) (omitting any reference to prejudgment interest), *with*

§ 1117(b) (providing that, for intentional counterfeiting, courts "*shall*," absent "extenuating

circumstances," award treble damages or a trebled accounting "together with a reasonable

attorney's fee," but that "[i]n such a case, the court *may* award prejudgment interest . . . as the

court considers appropriate" (emphasis added)).

For largely the same reasons that the Court declines to award Fresh its attorneys' fees, the

Court declines to award prejudgment interest on the Lanham Act claims. The Court also finds

that, notwithstanding the difficulty in measuring Fresh's injuries, any financial harm to Fresh has

been adequately compensated by the jury award. No more is needed. Fresh is, after all,

recovering both the full amount of DMC's profits on the four infringing product lines as

determined by the jury plus a retrospective 1.75% royalty as damages arising from the breach of

the License Agreement. The Court declines to exercise its discretion to award additional

prejudgment interest in these circumstances.

B.   Prejudgment Interest on the Contract Claim Runs from the Middle of Each
     Fiscal Year through the Date of the Judgment.

New York Civil Practice Law Section 5001 instructs courts on how to calculate

prejudgment interest as follows:

> Interest shall be computed from the earliest ascertainable date the cause of action
> existed, except that interest upon damages incurred thereafter shall be computed
> from the date incurred. Where such damages were incurred at various times,
> interest shall be computed upon each item from the date it was incurred or upon
> all of the damages from a single reasonable intermediate date.

N.Y. C.P.L.R. § 5001(b). Here, Fresh's damages—its loss of a 1.75% royalty—were indeed "incurred at various times" since they resulted from DMC's sale of thousands of items over a period of years. Those damages were incurred from the start of the statute of limitations to the date of the verdict. Since it is either impractical or impossible to compute interest "upon each item from the date" of its sale, the Court will compute interest "from a single reasonable intermediate date." *See id.*; *see also Barkley v. United Homes, LLC*, 848 F. Supp. 2d 248, 271 (E.D.N.Y. 2012) (quoting N.Y. C.P.L.R. § 5001(b)). "Accordingly, where damages are incurred at various times after the cause of action accrues, section 5001 grants courts wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 512 (2d Cir. 1994) (citation omitted); *see also Scherer v. Kane*, 98 Civ. 3186 (LMM), 2009 WL 2985699, at *4 (S.D.N.Y. Sept. 17, 2009).

The Court here exercises its discretion to treat each fiscal year's sales of the breaching items as a distinct bundle of damages, and for each fiscal year or portion thereof to set an intermediate date at its midpoint for the calculation of section 5001 prejudgment interest. The parties shall determine that interest based on sales figures covering the period from the start of the statute of limitations "to the date the verdict was rendered," which was April 6, 2012. *See* N.Y. C.P.L.R. § 5001(c).

New York law requires that a separate interest calculation in addition to that required by section 5001 be made: namely, the calculation required by section 5002. Section 5002 directs that prevailing plaintiffs also receive interest "upon the total sum awarded, including interest to verdict, . . . from the date the verdict was rendered . . . to the date of entry of final judgment." N.Y. C.P.L.R. § 5002; *see also Zhejiang Tongxiang Imp. & Exp. Corp. v. Asia Bank, N.A.*, 352 F. Supp. 2d 469, 471-72 (S.D.N.Y. 2005). In other words, pursuant to section 5001, the Court

17

will add 9% interest from the date the damages were incurred to the date of verdict; pursuant to section 5002, the Clerk of Court will add to the judgment 9% interest from the date of verdict to the date of judgment on the sum of (1) the contract damages and (2) the section 5001 interest.

## V.   CONCLUSION

In sum, the need for injunctive relief is not moot. But the evidence at trial and the jury's verdict do not support an injunction of the breadth Fresh has requested. The Court finds that the *eBay* test has been met and determines that the injunction outlined in this Opinion is appropriate and necessary.

The Court declines to award Fresh its attorneys' fees pursuant to 15 U.S.C. § 1117(a). The circumstances of this case do not warrant the Court exercising its discretion to require DMC to pay for Fresh's attorneys. Similarly, the Court declines to exercise its discretion to award prejudgment interest on Fresh's Lanham Act claims.

However, the Court will award statutory prejudgment interest on the damages arising from DMC's breach of the License Agreement. The Court will add simple 9% interest to the contract damages running from the mid-point of each fiscal year's sales from October 13, 2002—the start of the statute of limitations—to April 6, 2012, the date of the verdict. *See* N.Y. C.P.L.R. § 5001. In addition, pursuant to section 5002, the Court will instruct the Clerk of Court to add 9% interest to the judgment from the date of the verdict to the date of the judgment on the sum of (1) the contract damages and (2) the section 5001 interest.

The parties are directed to agree on or before April 19, 2013 on the appropriate sales figures, the amount of the section 5001 interest, and the precise language of the injunction to be ordered by the Court pursuant to this Opinion.

Dated: New York, New York
       March 28, 2013

SO ORDERED:

Sidney H. Stein, U.S.D.J.