

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
(212) 735-3097
DIRECT FAX
(917) 777-3097
EMAIL ADDRESS
ANTHONY.DREYER@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/29/13

April 23, 2012

**BY HAND**
Hon. Sidney H. Stein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St., Room 1010
New York, NY 10007-1312

        Re:  Fresh Del Monte Produce Inc. v. Del Monte
             Foods Co. and Del Monte Corp., 08-CV-8718 (SHS)

Dear Judge Stein:

      As the Court directed, we submit this letter jointly on behalf of Plaintiff Fresh Del Monte Produce Inc. ("Fresh Del Monte") and Defendants Del Monte Foods Company and Del Monte Corporation ("DMC").

      Pursuant to the Court's March 28, 2013 Opinion and Order (Dkt. 173), the parties have met-and-conferred in good faith on multiple occasions in an attempt to agree on the precise language of the permanent injunction and final judgment to be ordered by the Court. The parties' efforts were largely successful: we have reached agreement on the portion of the judgment related to damages and interest, as well as the majority of the provisions of the permanent injunction.

      However, the parties have been unable to agree to the language of three provisions. These provisions are discussed below, along with the parties' respective positions. Attached to this joint letter are proposed final judgments of Fresh Del Monte (Exhibit A) and DMC (Exhibit B); Microsoft Word versions are also being provided to Chambers.

Hon. Sidney H. Stein
April 23, 2013
Page 2

1.  **PARAGRAPH 2**

Fresh Del Monte's proposal: "DMC is permanently enjoined from entering into sales or distribution agreements that permit refrigeration of 'Del Monte'-branded products containing any of the Five Fruits at the point of sale."

DMC's proposal: "DMC is permanently enjoined from entering into sales or distribution agreements that require, recommend, specify, encourage, or expressly authorize refrigeration of 'Del Monte'-branded products containing any of the Five Fruits at the point of sale. The fact that any sales or distribution agreement does not address the issue of refrigeration shall not be construed as DMC's having required, recommended, specified, encouraged, or expressly authorized refrigeration in contravention of this injunction."

### Fresh Del Monte's Position

Fresh Del Monte's proposal is virtually identical to the language in the Court's March 28 Order ("DMC will be enjoined from entering into sales or distribution agreements *that permit refrigeration* of Del Monte-branded products containing the Five Fruits at the point of sale.") (emphasis added). DMC seeks to remove the word "permit" and replace it with far less restrictive language that would merely prevent DMC from taking action to "require" or "recommend" refrigeration of products containing the Five Fruits. In other words, DMC wants to eliminate the critical requirement that its future agreements foreclose the possibility that Breaching Products are sold in violation of Fresh Del Monte's exclusive rights under the License Agreement and leave open the possibility that DMC's customers will continue to sell its breaching products in refrigeration. Such a result is wholly consistent with the jury's finding, Fresh Del Monte's exclusive rights, and the other provisions in the injunction that require DMC to: (1) proactively notify retailers that Breaching Products are not to be sold under refrigeration and (2) if DMC learns that retailers are selling such products refrigerated, provide written notification to those retailers that such sale is prohibited.

If DMC is not prohibited from "entering into sales or distribution agreements that permit refrigeration" – as the Court directed in its Opinion and Order – DMC would be free to enter into agreements that are silent on the issue of whether its DEL MONTE-branded products containing the Five Fruits can be sold refrigerated. This would give its customers the right and ability to sell the products in refrigeration if they please, which is tantamount to permitting its customers to sell the products in refrigeration in violation of Fresh Del Monte's exclusive rights. Given that (as the Court noted) "the evidence showed DMC's own senior staff discussing 'what we can get away with vs. Del Monte Fresh Produce' in selling refrigerated products" (Op. at 7-8), the relief Fresh Del Monte seeks is critically important to ensure that its exclusive rights are protected.

Hon. Sidney H. Stein
April 23, 2013
Page 3

The provision at issue is not as burdensome as DMC may suggest. It would not require DMC to amend any existing contracts to include new language; rather, it applies only to future agreements (including extensions or amendments of existing agreements that DMC enters into in the future). DMC expresses concern that an injunction tracking the language of the Court's Opinion and Order might cause problems with standard-form contracts retailers may present to DMC in the future. However, a DMC retailer's use of a standard-form contract is no basis for DMC to violate Fresh Del Monte's rights, whether directly or indirectly. In all events, it would be relatively easy for DMC to modify any "standard-form contract" to include an additional sentence that recognizes that any DMC products containing one of the Five Fruits are not permitted to be sold refrigerated.

## DMC's Position

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, injunctions must describe with sufficient detail the act or acts restrained. *See* Fed. R. Civ. P. 65. In other words, Rule 65 requires that "an injunction be specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *The City of New York v. Mickalis Pawn Shop LLC*, 645 F.3d 114, 143 (2d Cir. 2010). Significantly, Rule 65 was designed to prevent uncertainty and confusion on the part of *those faced with injunctive orders*, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Id.* The language proposed by Del Monte is consistent with the standards set forth in Rule 65 and should be adopted by this Court.

In opposing Del Monte's proposal to Paragraph 2, Fresh urges the Court to adopt language that purports to prevent Del Monte from entering into sales and distribution agreements that "permit" the refrigeration of products containing the Five Fruits. Fresh's proposed language is vague, confusing and overly broad, leaving Del Monte at a loss as to what conduct it would be prevented from engaging in and covering products well outside the subject matter of this proceeding.

DMC currently sells, and has for nearly a century sold, *canned* pineapple products that are intended for shelving at the center of the store under ambient conditions. These products are warehoused under ambient conditions, transported under ambient conditions, and then placed by retailers in the canned fruit aisle next to other Del Monte-brand canned fruit products. These products never have been refrigerated, are not intended to be refrigerated and never came up as a subject in this litigation. These canned fruit items are sold to hundreds of retailers under standard retailer sale agreements which do not address, one way or another, the handling, refrigeration or placement of these canned food items. Fresh's proposed language of "permit" is ambiguous and could require DMC to engage in costly, time consuming, and perhaps futile attempts to negotiate into scores of standard form contracts the inclusion of an outright prohibition on refrigerating canned pineapple products that no one contemplates or intends being refrigerated. (This same issue would apply to

Hon. Sidney H. Stein
April 23, 2013
Page 4

others of the Five Fruits when and if DMC decides to sell canned, shelf-stable versions of these products.) In other words, the absence of a specific and outright prohibition on this subject could be deemed to "permit" a retailer to sell these products under refrigeration. The failure of a retailer to adjust its standard terms to prohibit the refrigeration of products that no one intends to be refrigerated could cause DMC to have to discontinue the sale of canned fruit products to some of its largest customers or risk being in breach of an ambiguous injunction.

DMC's language is precise and directed to the conduct which was at issue in this proceeding. DMC's language would prohibit DMC from entering into sales or distribution agreements that "require, recommend, specify, encourage, or expressly authorize refrigeration of 'Del Monte'-branded products containing any of the Five Fruits at the point of sale." This paragraph is itself really a back-stop to Paragraph 1 of the Proposed Final Judgment and Order, which permanently enjoins DMC from using the DEL MONTE trademark on any product containing the Five Fruits that is intended to be refrigerated or chilled at the point of sale. (DMC has already discontinued these products.) DMC is asking that Paragraph 2 be precisely tailored to cover the products which were the subject of this litigation using language which clearly aligns with the parameters set out in the Court's March 28 Opinion. Fresh summarily rejected Del Monte's proposed language, leaving the question left open to interpretation. This sort of guessing game is not permitted under Rule 65 and should not be tolerated by the Court.

3.     **PARAGRAPH 7**

Fresh's Proposal: "DMC shall, for any product containing sodium benzoate or potassium sorbate, set forth on the product label that sodium benzoate or potassium sorbate are preservatives."

DMC's proposal: "DMC shall, for any product containing sodium benzoate or potassium sorbate, set forth on the product label that sodium benzoate or potassium sorbate are preservatives, but DMC is not required to state that product 'Contains Preservatives' on its front."

### Fresh Del Monte's Position

In its Opinion and Order, the Court denied Fresh Del Monte's request for an injunction that would require DMC to state on the front of its refrigerated products that they "Contain Preservatives." DMC improperly seeks to convert the denial of that request into a permanent order of the Court that blesses DMC's conduct with respect to all future packaging for all of its products, regardless the situation. It is not proper for a permanent injunction to expressly *authorize* conduct in all future cases and for all future circumstances, regardless of the facts or law at issue. *See In re DDAVP Indirect Purchaser Antitrust Litig.*, 05-CV-2237 CS, 2012 WL 4932158 (S.D.N.Y. Oct. 17, 2012) ("The sole function of an action for injunction is to

Hon. Sidney H. Stein
April 23, 2013
Page 5

forestall future violations.") (citing *United States v. Or. State Med. Soc'y*, 343 U.S. 326, 333-34, 72 S.Ct. 690, 96 L.Ed. 978 (1952)). For example, there may be future circumstances in which DMC's failure to include the "Contains Preservatives" language could violate the Lanham Act, future legal precedent, or applicable labeling law or guidelines.

In the event the Court decides the language requested by DMC, then Fresh Del Monte requests that the provision also include the following (bolded) language: ". . . but DMC is not required **by the terms of this injunction** to state that the product 'Contains Preservatives' on its front. **This injunction is without prejudice to any potential claim by Fresh Del Monte that DMC's labeling, marketing, or sale of its products is false or misleading.**" Tellingly, DMC declined this proposal during the parties' meet-and-confer negotiations, confirming Fresh Del Monte's concern that DMC is attempting to immunize its future behavior with this injunction.

### DMC's Position

Del Monte's proposed Paragraph 7, which is taken verbatim from this Court's Order and Opinion, sets out in unambiguous terms the scope and limitations of the proscribed conduct. Nonetheless, Fresh objects to the inclusion of the clause: "but DMC is not required to state that product 'Contains Preservatives' on its front."

Fresh has not offered any legitimate basis for excluding the clarifying clause proposed by Del Monte. Instead, Fresh has maintained that this sort of clarifying or limiting language is not typical of an injunction. Importantly, to date, Fresh has not argued that Del Monte's proposed language runs afoul of Rule 65. Nor has Fresh denied that the proposed language provides clarity on what conduct is proscribed. Fresh has also failed to articulate any prejudice to it if the Court were to adopt the clarifying clause. That Fresh does not consider the clause necessary is not relevant. The relevant inquiry is whether the language is useful to prevent uncertainty and confusion by Del Monte – the party faced with the injunction. *See Mickalis Pawn Shop*, 645 F.3d at 143. It does.

Absent Del Monte's proposed clause, there is a reasonable question as to whether Del Monte is required under the injunction to state that a product "Contains Preservatives" on its front. The Court implicitly recognized this ambiguity in its Opinion as it too included the clarifying clause in setting out the parameters of the injunction. *See* Opinion and Order dated March 28, 2013 at p. 11. Del Monte's proposed language should, therefore, be adopted.

4.      **PARAGRAPH 10**

Fresh's Proposal: "DMC is permanently enjoined from disseminating the 'Fruit Undressed' advertisements."

Hon. Sidney H. Stein
April 23, 2013
Page 6


DMC's proposal: "DMC is permanently enjoined from disseminating the 'Fruit Undressed' advertisements, but DMC will not be required to state in any future campaign that the products are preserved."

### Fresh Del Monte's Position

Fresh Del Monte's concerns about the additional sentence proposed by DMC are similar to those discussed above with respect to paragraph 7, namely that the language is superfluous and outside the proper scope of an injunction. In fact, DMC's proposal in Paragraph 10 is even more troubling given its enormous breadth, in that it purports to address what DMC is *not* required to do "in any future [advertising or marketing] campaign" and thus is tantamount to an improper advisory opinion.

We do not believe that the Court intended to grant DMC a *carte blanche* to abstain from referencing that products are preserved in its marketing materials regardless of any other circumstances or statements in those ads. In the event the Court nevertheless decides that the additional language should be included in the injunction, Fresh Del Monte requests that the provision also include the following (bolded) language: ". . . but DMC will not be required **by the terms of this injunction** to state in any future campaign that the products are preserved. **This injunction is without prejudice to any potential claim by Fresh Del Monte that DMC's labeling, marketing, or sale of its products is false or misleading.**"

### DMC's Position

The rationale for including a clarifying clause in Paragraph 7 applies with equal force to Paragraph 10. Here again, Del Monte has proposed language that serves to prevent uncertainty and confusion. Nonetheless, Fresh objects to the inclusion of the clause: "but DMC will not be required to state in any future campaign that the products are preserved." Without this proposed clarifying language, Del Monte is left to guess whether it would act in violation of the injunction if it were to disseminate future ad campaigns that, like the "Fruit Undressed" advertisements, do not state that the products are preserved.

Because "an injunction order prohibits conduct under the threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *See Mickalis Pawn Shop*, 645 F.3d at 143. Fresh's steadfast and consistent refusal to include clarifying language is not only troubling, it is telling. Given the parties' decades-long history of litigation, Del Monte urges the Court to include its proposed language which minimizes confusion and the potential for future and costly litigation. The Court implicitly recognized this ambiguity in its Opinion as it too included the clarifying clause in setting out the parameters of the injunction. *See* Opinion and Order dated March 28, 2013 at p. 11. Del Monte's proposed language should, therefore, be adopted.

\* \* \* \*

We thank the Court for its time and attention to this matter.

Respectfully submitted,

Anthony J. Dreyer

cc: Arturo J. Gonzalez, Esq. (by email)
     LaShann M. DeArcy, Esq. (by email)

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ X

FRESH DEL MONTE PRODUCE INC.,          :

       **Plaintiff and**                     :   08 Civ-8718(SHS)
       **Counterclaim Defendant,**
                                             :   ECF Case
       - against -
                                             :   Electronically Filed

DEL MONTE FOODS COMPANY, and
DEL MONTE CORPORATION,                 :

       **Defendants and**                    :
       **Counterclaim Plaintiffs.**
                                             :
------------------------------ X

## [PROPOSED] FINAL JUDGMENT AND ORDER

WHEREAS, following trial, on April 6, 2012, the jury empaneled in this case rendered a verdict, which is attached hereto;

WHEREAS the parties submitted post-trial briefing on the issues of permanent injunctive relief, attorney's fees, and prejudgment interest; and

WHEREAS, on March 28, 2013, the Court issued an Opinion & Order regarding the appropriate scope of post-trial relief;

IT IS HEREBY ORDERED THAT:

1.    DMC is permanently enjoined from using the DEL MONTE trademark (including but limited to the DEL MONTE word mark, the DEL MONTE shield, and any other mark or term incorporating DEL MONTE) (collectively, the "Mark") on any product containing pineapple, melon, berry, papaya and/or banana (the "Five Fruits") that is intended to be refrigerated or chilled at the point of sale (the "Breaching Products");

2. DMC is permanently enjoined from entering into sales or distribution agreements that permit refrigeration of "Del Monte"-branded products containing any of the Five Fruits at the point of sale;

3. DMC shall notify all known retailers of the Breaching Products that those products are not to be sold under refrigeration at the point of sale to the public;

4. Through March 31, 2015, if DMC learns that any of its customers are refrigerating DMC's "Del Monte"-branded products containing any of the Five Fruits at the point of sale, DMC shall notify that customer in writing that it is not permitted to sell such products under refrigeration;

5. DMC is permanently enjoined from pasteurizing fruit products intended to be refrigerated or chilled at the point of sale, or where DMC knows that such products are actually refrigerated or chilled at the point of sale, without stating on the label of such products that they are pasteurized;

6. DMC is permanently enjoined from adding chemical preservatives to fruit products intended to be refrigerated or chilled at the point of sale, or where DMC knows that such products are actually refrigerated or chilled at the point of sale, without identifying them as "preservatives" on the label of such products;

7. DMC shall, for any product containing sodium benzoate or potassium sorbate, set forth on the product label that sodium benzoate or potassium sorbate are preservatives;

8. DMC is permanently enjoined from stating that any DMC preserved fruit product "Must be Refrigerated" without test results that establish that the product is not shelf stable and therefore must be refrigerated;

9. DMC is permanently enjoined from setting "best by," "sell by," or other similar dates on its non-canned fruit products without test results that justify the existence of such a date; and

10. DMC is permanently enjoined from disseminating the "Fruit Undressed" advertisements.

IT IS FURTHER ORDERED THAT:

11. Pursuant to the jury award, DMC shall pay Fresh Del Monte $7,200,000 as an award of DMC's profits derived from its willful violation of the Lanham Act.

12. Pursuant to the jury award, DMC shall pay Fresh Del Monte $5,950,000 in damages for DMC's breach of contract;

13. Pursuant to N.Y.C.P.L.R. § 5001, DMC shall pay Fresh Del Monte 9% simple interest on the damages for breach of contract, dating from October 13, 2002 through April 6, 2012 in the amount of $2,261,733.00;

14. As stipulated by the parties, DMC shall pay Fresh Del Monte a 1.75% royalty for sales of the breaching products from February 1, 2012 through December 31, 2012 in the amount of $376,778.77;

15. Pursuant to N.Y.C.P.L.R. § 5001, DMC shall pay Fresh Del Monte 9% simple interest on royalty damages for sales of the breaching products from February 1, 2012 through the date of the verdict, April 6, 2012 in the amount of $604.00; and

16. Pursuant to N.Y.C.P.L.R. § 5002, DMC shall pay Fresh Del Monte 9% interest from April 6, 2012 to the date of this Order on the sum of: (a) the contract damages (the sum of Paragraphs 11 and 13 above), and (b) the § 5001 interest (the sum of Paragraphs 12 and 14 above), the precise amount to be determined by the Clerk of the Court.

Dated: New York, New York
       April \_\_\_\_, 2013

                              SO ORDERED:

                              _____
                              Sidney H. Stein, U.S.D.J.

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------- X

FRESH DEL MONTE PRODUCE INC.,      :

       **Plaintiff and**           :   08 Civ-8718(SHS)
       **Counterclaim Defendant,**
                                   :   **ECF Case**
    - against -
                                   :   **Electronically Filed**

**DEL MONTE FOODS COMPANY, and**
**DEL MONTE CORPORATION,**           :

       **Defendants and**           :
       **Counterclaim Plaintiffs.**
                                   :
------------------------------- X

## [PROPOSED] FINAL JUDGMENT AND ORDER

WHEREAS, following trial, on April 6, 2012, the jury empaneled in this case rendered a verdict, which is attached hereto;

WHEREAS the parties submitted post-trial briefing on the issues of permanent injunctive relief, attorney's fees, and prejudgment interest; and

WHEREAS, on March 28, 2013, the Court issued an Opinion & Order regarding the appropriate scope of post-trial relief;

IT IS HEREBY ORDERED THAT:

1.    DMC is permanently enjoined from using the DEL MONTE trademark (including but limited to the DEL MONTE word mark, the DEL MONTE shield, and any other mark or term incorporating DEL MONTE) (collectively, the "Mark") on any product containing pineapple, melon, berry, papaya and/or banana (the "Five Fruits") that is intended to be refrigerated or chilled at the point of sale (the "Breaching Products");

2. DMC is permanently enjoined from entering into sales or distribution agreements that require, recommend, specify, encourage, or expressly authorize refrigeration of 'Del Monte'-branded products containing any of the Five Fruits at the point of sale. The fact that any sales or distribution agreement does not address the issue of refrigeration shall not be construed as DMC's having required, recommended, specified, encouraged, or expressly authorized refrigeration in contravention of this injunction;

3. DMC shall notify all known retailers of the Breaching Products that those products are not to be sold under refrigeration at the point of sale to the public;

4. Through March 31, 2015, if DMC learns that any of its customers are refrigerating DMC's "Del Monte"-branded products containing any of the Five Fruits at the point of sale, DMC shall notify that customer in writing that it is not permitted to sell such products under refrigeration;

5. DMC is permanently enjoined from pasteurizing fruit products intended to be refrigerated or chilled at the point of sale, or where DMC knows that such products are actually refrigerated or chilled at the point of sale, without stating on the label of such products that they are pasteurized;

6. DMC is permanently enjoined from adding chemical preservatives to fruit products intended to be refrigerated or chilled at the point of sale, or where DMC knows that such products are actually refrigerated or chilled at the point of sale, without identifying them as "preservatives" on the label of such products;

7. DMC shall, for any product containing sodium benzoate or potassium sorbate, set forth on the product label that sodium benzoate or potassium sorbate are preservatives, but DMC is not required to state that product 'Contains Preservatives' on its front;

8. DMC is permanently enjoined from stating that any DMC preserved fruit product "Must be Refrigerated" without test results that establish that the product is not shelf stable and therefore must be refrigerated;

9. DMC is permanently enjoined from setting "best by," "sell by," or other similar dates on its non-canned fruit products without test results that justify the existence of such a date; and

10. DMC is permanently enjoined from disseminating the 'Fruit Undressed' advertisements, but DMC will not be required to state in any future campaign that the products are preserved.

IT IS FURTHER ORDERED THAT:

11. Pursuant to the jury award, DMC shall pay Fresh Del Monte $7,200,000 as an award of DMC's profits derived from its willful violation of the Lanham Act.

12. Pursuant to the jury award, DMC shall pay Fresh Del Monte $5,950,000 in damages for DMC's breach of contract;

13. Pursuant to N.Y.C.P.L.R. § 5001, DMC shall pay Fresh Del Monte 9% simple interest on the damages for breach of contract, dating from October 13, 2002 through April 6, 2012 in the amount of $2,261,733.00;

14. As stipulated by the parties, DMC shall pay Fresh Del Monte a 1.75% royalty for sales of the breaching products from February 1, 2012 through December 31, 2012 in the amount of $376,778.77;

15. Pursuant to N.Y.C.P.L.R. § 5001, DMC shall pay Fresh Del Monte 9% simple interest on royalty damages for sales of the breaching products from February 1, 2012 through the date of the verdict, April 6, 2012 in the amount of $604.00; and

16.     Pursuant to N.Y.C.P.L.R. § 5002, DMC shall pay Fresh Del Monte 9% interest from April 6, 2012 to the date of this Order on the sum of: (a) the contract damages (the sum of Paragraphs 11 and 13 above), and (b) the § 5001 interest (the sum of Paragraphs 12 and 14 above), the precise amount to be determined by the Clerk of the Court.

Dated: New York, New York
       April ____, 2013

                              SO ORDERED:


                              _____
                              Sidney H. Stein, U.S.D.J.